IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SIX DIMENSIONS, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-02680 |
| | ) | |
| PERFICIENT, INC. and | ) | |
| LYNN M. BRADING, | ) | |
| | ) | |
| *Defendants.* | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

### I.    SUMMARY OF ARGUMENT

Defendants move for summary judgment on all Counts of Plaintiff's Verified Amended Complaint.  (Dkt. No. 53).  The contracts upon which Six Dimensions bases many of its claims are unenforceable and void under applicable California law. The remainder of Plaintiff's claims lack any competent evidence, and must likewise be dismissed.

The agreement between Six Dimensions and Defendant Brading - drafted by Six Dimensions - contains three key provisions: (1) a 2-year post-termination employee nonhire provision; (2) a 2-year post-termination customer nonsolicitation provision; and (3) a California choice-of-law provision.[1]  There is good reason why

---

[1]  Notably, in its initial Verified Complaint, Plaintiff asserted that California law applies.  (Dkt. No. 1, ¶ 14).  Recognizing that California law was fatal to its claims, Plaintiff changed the allegation to assert that Texas law applies, despite the express California choice-of-law provisions

Six Dimensions chose California law to apply -- its corporate headquarters were located in California when Brading signed the Agreement, and it was a California corporation at the time the parties entered into the Agreement.

Following the California Supreme Court's landmark decision in *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 189 P. 3d 285 (Cal. 2008), numerous California courts have held that agreements containing customer nonsolicitation and employee nonhire provisions like those in the agreement are anticompetitive and violate California Bus. & Prof. Code section 16600. Section 16600 explicitly states that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Section 16600 evinces California's fundamental policy against *all* restraints on trade. *Id.* at 946. Employee and customer nonsolicitation covenants are subject to section 16600. *See, e.g., Strategix, Ltd. v. Infocrossing West, Inc.,* 142 Cal.App.4th 1068, 1072 (Cal. Ct. App. 2006).

The agreement does not fall within any of the exceptions to section 16600, and is therefore void and unenforceable. Accordingly, both Six Dimensions' breach of contract and tortious interference with contract claims must be dismissed.

---

in the Agreement. (Dkt. No. 53, ¶ 19). Plaintiff realizes that the application of California law is fatal to its contract-related claims.

Six Dimensions' claim for tortious interference with prospective economic relations fails because Plaintiff cannot prove any independently wrongful or tortious conduct by Defendants. Each of the individuals who resigned from Six Dimensions and went to Perficient was an employee at will. Communications about them leaving Six Dimensions to join Perficient are independently *lawful* but for the invalid and unenforceable employee nonhire provisions.

Six Dimensions' trade secret claims are also deficient, due to the lack of any protectable trade secrets. Brading and the other former employees are permitted to use both publicly-available information and their general knowledge, skills, and experience acquired during employment at Six Dimensions to compete. The identities, experience, and contact information of Six Dimensions' employees are precisely that—general knowledge and experience that are a far cry from protectable trade secrets.

Six Dimensions' claim for unfair competition under California law fails because the statute does not apply extraterritorially; there is no evidence that *any* alleged injury or misconduct by Defendants physically occurred in California.

## II.    STATEMENT OF SUMMARY JUDGMENT FACTS[2]

### A.    Six Dimensions' hiring of Brading and the Agreement at issue.

In August 2014, Six Dimensions hired Lynn Brading ("Brading") as a Corporate Partnership Manager.    (Brading Depo., at 6).    Throughout her employment with Six Dimensions, Brading was an at-will employee.   (Plaintiff's Responses to Request to Admit, Request No. 1, copy attached as Ex. H).

Six Dimensions required Brading to sign a Confidential Information and Invention Assignment Agreement ("Agreement") which it emailed to Brading from its California corporate headquarters.  (*Id.* at 22, Exh. 24).  The Agreement expressly states that Six Dimensions was a California corporation at that time.  (*Id.* at Exh. 24, p. 1).   Six Dimensions' California-based HR employee signed the Agreement on behalf of Perficient.  (*Id.* at Exh. 24, p. 5; Harris Depo., at 86-87).

The Agreement contains three key provisions: (1) a 2-year post-termination employee nonhire provision; (2) a 2-year post-termination customer nonsolicitation provision; and (3) a California choice of law provision.[3]

---

[2]   The facts set forth in this summary judgment motion are based on the deposition testimony of Lynn Brading, Dan Klco, Jeanette Gomez, Ryan McCullough, Edward Hoffman, Aaron Price, and Tandy Harris.  True and correct copies of the pertinent portions of the condensed deposition transcripts of these witnesses are included as Exhibits A through G, respectively.

[3] Those provisions specifically provide as follows:

### 8.    <u>Solicitation of Employees, Consultants, Customers and Suppliers</u>

(a)      During the term of my Relationship with the Company and for a period of two (2) years after the termination of my Relationship for any reason (whether

Six Dimensions chose California law because that is where Six Dimensions was incorporated and where it was originally located.   (Harris Depo., at 97). California is where Six Dimensions' corporate headquarters were located from the time the office opened until sometime in 2018.   (*Id.* at 46-47).[4]

**B.      Brading resigns from Six Dimensions and goes to work for Perficient.**

On June 10, 2015, Brading resigned her employment with Six Dimensions to go work for Perficient.  (Brading Depo., at 20).  Six Dimensions cannot identify any

---

voluntary or involuntary), I will not, directly or indirectly, solicit, recruit or hire any employee or consultant of the Company to work for a third party other than the Company or assist any third party, person or entity to solicit, recruit, or hire any employee or consultant of the Company, or knowingly engage in any activity that would cause any employee or consultant to violate any agreement with the Company.

(b)  During the term of my Relationship with the Company and for a period of two (2) years after the termination of my Relationship for any reason (whether voluntary or involuntary), I will not, directly or indirectly, solicit, entice or induce any Customer or Supplier (as defined below) of the Company to become a Customer or Supplier of any other person or entity engaged in any activity competitive with the Company or its affiliates, or to cease doing business or reduce its business with the Company or its affiliates, and I will not assist any person or entity in taking any such action.

. . .

10.   **General Provisions.**

(a)      **Governing Law.**      The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of California, without giving effect to the principles of conflict of laws.

(Brading Depo., Exh. 24, ¶¶ 8, 10).

[4] In 2015, when Six Dimensions hired Harris, he immediately changed the California law provision in Six Dimensions' agreements to New York law, because the California law provisions were "incorrect."  (Harris Depo., at 29, 95, 135).

company documents or property that Brading took with her when she left. (Harris Depo., at 178-79, 184).

### C. In the Fall of 2015, other individuals resign from Six Dimensions to work for Perficient.

2015 was a chaotic year for employees at Six Dimensions. The SEC indicted Benjamin Wey, a large investor in Six Dimensions, for fraud. (Klco Depo., at 162, 182; Harris Depo., at 210). In late 2015, NASDAQ delisted Six Dimensions' stock. (Harris Depo., at 70, 195-96). Six Dimensions held town hall meetings with its employees to discuss the delisting of its stock on NASDAQ. (*Id.* at 209).

Seven employees (in addition to Brading) resigned their jobs at Six Dimensions and went to work for Perficient in 2015: Sothea Nim, Nick Whittenburg, Eddie Yao, Dan Klco, Ryan McCullough, Aaron Price, and Matt Shields (collectively referred to as "the Former 6D Employees"). (*See* Plaintiff's Verified Amended Complaint, Dkt. No. 53, at ¶ 62). Each was an employee at will during his employment with Six Dimensions. (Plaintiff's Responses to Requests to Admit, Request Nos. 3, 5, 7, 9, 11, 13, and 15).[5]

Jeanette Gomez was one of Perficient's recruiters. (Gomez Depo., at 24-25). Gomez recruited the Former 6D Employees to come work for Perficient. (*Id.* at 53-

---

[5] Each of the Former 6D Employees also signed agreements with Six Dimensions containing employee nonhire provisions, customer nonsolicitation provisions, and California law provisions. *See, e.g.,* Price Depo., Exh. 46; McCullough Depo., Exh. 50; Klco Depo., Exh. 38. These agreements are also void and unenforceable under California law.

57).  She sent standard template emails via LinkedIn to some or all of the Former

6D Employees.  (*Id.* at 117-19, Exh. 3).

Brading provided Gomez the names of individuals that she (*i.e.,* Brading)

worked with while at Six Dimensions, and the links to the LinkedIn profiles of

certain individuals.  (Brading Depo., at 89-90, 194).  Six Dimensions admits that

"personal [ ] e-mail address, telephone number or contact information on Linked In"

is public information that is not confidential.  (Harris Depo., at 173-74).  Brading

did not provide any Six Dimensions' trade secrets (if it has any) to Gomez to recruit

the Former 6D Employees.  (Gomez Depo., at 108).

### D.    Ryan McCullough's work for Perficient's preexisting client Medtronic.

Six Dimensions asserts that Perficient sought and obtained Six Dimensions'

confidential information from McCullough.  (*See* Verified Amended Complaint,

Dkt. No. 53, ¶ 134).  The indisputable facts refute Six Dimensions' assertion.

Perficient hired McCullough in November 2015.  (McCullough Depo., at 100-

101).  In June 2015, months before Perficient hired McCullough, it started work on

a project for a customer, Medtronic, pursuant to a Statement of Work.  (Hoffman

Depo., at 75, 97-99, 107).

While employed by Six Dimensions. McCullough had worked on a project

for Medtronic to maintain and update Medtronic's existing web site.  (McCullough

Depo., at 68).   It involved programming and code work, code that is owned by Medtronic, not Six Dimensions.  (*Id.* at 177).

The project McCullough worked on after Perficient hired him was an entirely different one—one to develop a brand new Medtronic website.  (*Id.* at 68; Hoffman Depo., at 74).   Perficient started from scratch on developing the brand new Medtronic web site.  (McCullough Depo., at 184).  McCullough does not believe he used any of the contributions to the Medtronic-owned code base after he left Six Dimensions and joined Perficient.  (*Id.* at 178).

E.     **Dan Klco's Blog Post**

Klco wrote a blog post while employed by Six Dimensions that was on the Internet (and remains on the Internet today).  (Klco Depo., at 88-89, 110, Exh. 40). One of the blog posts that he wrote described how users could utilize something known as an Apache Sling tool.  (*Id.* at 93, 98).

After Perficient hired Klco, he published an article about the same general Apache Sling topic.  (*Id.* at 91, Exh. 41).  Klco newly-authored this article and it contained different images from the blog he posted at Six Dimensions; he did not re-publish the Six Dimensions blog post; he did not copy or "paste" anything from the Six Dimensions blog post.  (*Id.* at 104, 109, 112, 121, Exh. 41).  Instead, at Perficient, he opened up the application with the new version of Adobe Experience Manager

and took a new screen shot of the images contained in the Perficient blog post. (*Id.* at 112, 116).

## III.   ARGUMENT AND AUTHORITIES

### A.   Plaintiff's breach of contract claim (Count IV) fails because the Agreement is void and unenforceable.

#### 1.   California Bus. & Prof. Code Section 16600 reflects California law that refuses to enforce restraints of trade.

Restraints against competition are illegal under applicable California law. *See Edwards v. Arthur Andersen LLP,* 44 Cal. 4th 937, 946, 189 P. 3d 285 (Cal. 2008). Bus. and Prof. Code section 16600 explicitly states that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  In *Edwards,* the most recent California Supreme Court decision on this issue, the Court again affirmed the importance of this policy, noting that section 16600 "evinces a settled legislative policy in favor of open competition and employee mobility."  *Id.*

#### 2.   Unless a covenant falls within one of the enumerated statutory exceptions to Section 16600, it is void.

In *Edwards,* Arthur Andersen argued that restraints that do not *entirely prevent* a person from engaging in a chosen business, trade or profession, but merely *regulate* some aspect of post-employment conduct (e.g., to prevent solicitation of

the former employer's personnel), are not within the scope of section 16600. *Id.* at 947.

The California Supreme Court rejected the narrow restraint argument as inconsistent with the plain text of section 16600, which it declared as "unambiguous." *Id.* at 948 – 50. The *Edwards* court went on to state that restrictive covenants "are invalid under section 16600 in California, even if narrowly drawn, unless they fall within the applicable statutory exceptions . . ." *Id.* at 955; *see also Golden v. Cal. Emergency Physicians Med. Group*, 782 F.3d 1083, 1091 (9th Cir. 2015); *Couch v. Morgan Stanley & Co.*, 2015 U.S. Dist. LEXIS 104021, at * 53 (E.D. Cal. Aug. 6, 2015) ("Since *Edwards*, the California courts have made clear that section 16600 provides an **across-the-board prohibition** on non-solicit clauses, unless one of the limited statutory exceptions applies… In other words, the Ninth Circuit's 'narrow restraint' exception is no longer applicable after *Edwards*."). (emphasis added).

Several other California federal courts have also invalidated employee nonsolicitation and nonhire clauses as violative of section 16600. In *Fields v. QSP, Inc.,* 2012 U.S. Dist. LEXIS 78001 *24 (C.D. Cal. June 4, 2012), the employee nonsolicitation clause purported to preclude plaintiff from "induc[ing] or attempt[ing] to induce" any of defendant's employees from leaving their

employment for twelve months after employment.  The Court declared it illegal, explaining:

> Such restrictions are **per se unlawful** under California law regardless of the reasonableness of the covenant, because "an employer cannot by contract restrain a former employee from engaging in his or her profession," as paragraphs 1(a)-(e) and 3(b) of the agreement attempt to do here.

*Id.* at *27 (emphasis added); s*ee also*, *SriCom, Inc. v. eBisLogic, Inc.*, 2012 U.S. Dist. LEXIS 131082 * 12 (N.D. Cal. Sept. 13, 2012) (covenant by which recruiter could not solicit or hire any employees who were working for plaintiff for one year violates section 16600 and is void).

    3.    <u>The Agreement is void.</u>

The customer nonsolicitation and employee nonhire provisions in the Agreement are even broader than those struck down in the cases discussed above. The customer nonsolicitation provision proscribes Brading from soliciting, enticing, or inducing any Customer or Supplier of Six Dimensions (as defined in the Agreement) to cease or reduce its business with Six Dimensions by doing business with any other competitor, for 2 years.  (Brading Depo., Exh. 24, ¶ 8(b)).  The definition of Customers broadly includes not only all customers of Six Dimensions,

but prospective and past customers of Six Dimensions as well.  (*Id.*).[6]  The customer

nonsolicitation provision is patently unenforceable under California law.

The employee nonhire provision in the Agreement is also unenforceable.  It

prohibits Brading from soliciting, recruiting, or hiring or assisting in the soliciting,

recruiting, or hiring of any employee or consultant of Six Dimensions, again for 2

years.  (*Id.* at ¶ 8(a)).

Both the customer nonsolicitation and the employee nonhire provisions

restrain competition in multiple ways, restricting the opportunities of not only

Brading but also Six Dimensions' employees and competitors in the marketplace.

None of the statutory exceptions to section 16600 applies.  The Agreement is void

under *Edwards* and section 16600.

> 4. <u>The unenforceable covenants in the Agreement cannot be saved.</u>

There is no basis for the Court to re-write illegal contract clauses that Six

Dimensions failed to properly draft in the first place.  In *Kolani v. Gluska*, 64

Cal.App.4th 402 (Cal. Ct. App. 1998), the California court of appeals explained that

"courts reform contracts only where the parties have made a mistake, and not for the

purpose of saving an illegal contract."  *Id.* at 407 (internal citations omitted).  The

court of appeals in *Kolani* further emphasized that trial courts "should not rewrite

---

[6] Six Dimensions is taking the position in this lawsuit that it has lost current and prospective customers as a result of Brading's alleged actions.  (Plaintiff's Response to Defendants' Second Set of Interrogatories, Interrogatory No. 1, attached as Ex. I).

the broad covenant not to compete into a narrow bar on theft of confidential information." *Id.* at 408.

### B. **Plaintiff's tortious interference with contract claim (Count I) fails because it cannot demonstrate the existence of a valid contract.**

One of the required elements for a tortious interference with contract claim is that a valid contract exists. *See, e.g., Stemtech Int'l Inc. v. Drapeu*, 2016 U.S. Dist. LEXIS 178591, *31 (W.D. Tex. Dec. 27, 2016) (citation omitted); *see also Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 140 (Tex. App. 2005). Six Dimensions cannot establish the existence of a *valid* contract that Perficient allegedly interfered with.

As demonstrated above, the Agreement between Six Dimensions and Brading is void under California law. So too are the agreements signed by the Former 6D Employees, which are also governed by California law, for the same reasons.[7]

Moreover, Brading and each of the Former 6D Employees were employees at will while working for Six Dimensions. (*See* Exhibit H, Answers to Request Nos. 1, 3, 5, 7, 9, 11, 13, and 15). Either Six Dimensions or any of the individuals could terminate their employment relationship at any time, for any reason, with or without notice. Thus, "merely inducing one of the parties to exercise his right to terminate contractual relations after giving the required notice" does not constitute tortious

---

[7] *See* Price Depo., Exh. 46; McCullough Depo., Exh. 50; Klco Depo., Exh. 38.

interference with contract under Texas law. *Faucette v. Chantos*, 322 S.W.3d 901, 914 (Tex. App. 2010) (citation omitted); *see also ACS Investors v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

### C. **Plaintiff's tortious interference with prospective economic relations claim (Count III) fails because there are no facts showing independently wrongful or tortious conduct by Defendants.**

The elements of this claim are similar to those of a tortious interference with contract claim, except that Plaintiff need not allege the existence of a valid contract. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Six Dimensions must prove conduct that was independently tortious or wrongful, *i.e.*, that Defendants' conduct would be actionable under a recognized tort. *See Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). Moreover, Six Dimensions must prove that the act interfered with a reasonably probable contract that would have been entered into but for the interference. *Coinmach*, 417 S.W.3d at 924.

Here, Six Dimensions' prospective economic relations claim is based on Defendants' purported interference with Six Dimensions' at-will relationships with the Former 6D Employees. (See Dkt. No. 53, ¶¶ 96, 107). Six Dimensions cannot demonstrate any independently wrongful or tortious conduct on the part of Perficient, nor can Six Dimensions demonstrate any reasonable probability that the Former 6D Employees would have maintained their employment relationship with

Plaintiff.   Neither Brading's nor Perficient's approaching and encouraging of the Former 6D Employees to join Perficient is an independently wrongful act.

There is simply no evidence of an otherwise wrongful act, *other than the purported violation of the unenforceable agreements*.   These alleged actions of interference, regardless of Six Dimensions' allegations as to the number of employees or the employees' alleged value and potential value, are independently *lawful* but for the invalid and unenforceable employee nonhire provisions Six Dimensions seeks to impose here.

**D.**     **Plaintiff's claim against Brading for unfair competition under California law (Count II) fails because there is no evidence that any injury or misconduct by Defendants physically occurred in California.**

Plaintiff does not have a cognizable claim for unfair competition under California's Unfair Competition Law, Cal Bus. & Prof. Code § 17200 *et seq.* ("UCL").[8]   This law does not apply extraterritorially (*i.e.,* outside of California).

As the California Supreme Court has explained: "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially.   Accordingly, the presumption against extraterritoriality applies to the UCL in full force."  *Sullivan v. Oracle Corp.*, 51 Cal.

---

[8]  Plaintiff seeks a permanent injunction and attorneys' fees as part of this claim.  (Dkt. No. 53, ¶ 84).  However, the UCL does not permit Plaintiff to recover damages, attorney's fees or costs. *Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (Cal. 2013) ("Prevailing plaintiffs are generally limited to injunctive relief and restitution. Plaintiffs may not receive damages . . . or attorney fees." (citations omitted) (alterations in original)).

4th 1191, 1207 (Cal. 2011); *see also Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013).

Six Dimensions may argue that the California law provision in the Agreement would permit the application of the UCL here. The court in *O'Connor v. Uber Techs., Inc.,* 58 F. Supp. 3d 989, 1004 (C.D. Cal. 2014) rejected that argument, reasoning that to the extent California law applies, it "incorporates *all* of California law—including California's presumption against extraterritorial application of its law." *Id.* at 1005. Thus, there is no basis to apply the UCL here, and Six Dimensions' UCL claim must be dismissed.

### E. Plaintiff's remaining claims (Counts V - VIII) fail because there is no evidence of any protectable trade secrets that Defendants took.

Plaintiff's remaining causes of action alleging unfair competition, unjust enrichment, and misappropriation of trade secrets (under both the Texas and California Uniform Trade Secrets Acts) are, in essence, the same claims denominated somewhat differently.[9] At the core of each claim lies Six Dimensions'

---

[9] Under Texas common law, "unfair competition" includes several causes of action including: (1) passing off, *i.e.*, misrepresenting one's own goods or services as someone else's, or palming off, *i.e.*, misrepresenting someone else's goods or services as one's own; (2) trade secret misappropriation; or (3) common law misappropriation. *See*, e.g., *Taylor Publ'g. Co. v. Jostens Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). The similarity in these claims is the alleged taking and use of a trade secret. Defendants analyze Six Dimensions' duplicative trade secret claims under Texas law. But the trade secret claims also fail for the same reasons under California law—there is no evidence of any protectable trade secret.

allegation that Defendants misappropriated the identities, skill sets, and knowledge base of Six Dimensions' employees.  (See Dkt. No. 53, ¶¶ 129-30, 161, 163).[10]

Six Dimensions' unfair competition and unjust enrichment claims are preempted by the Texas Uniform Trade Secrets Act ("TUTSA"), which governs all trade secret misappropriation that occurs after September 1, 2013. *See* TEX. CIV. PRAC. & REM. CODE § 134A.007(a).  The events giving rise to Six Dimensions' purported claims occurred after September 1, 2013.

Under TUTSA, a required element of a trade secret claim is the existence of a trade secret.  *See, e.g., Stemtech*, 2016 U.S. Dist. LEXIS 178591 at *31 (citation omitted).  It is black letter Texas law that "[a]n employee may use his general knowledge, skill and experience acquired in the former employment to compete."

---

[10]  Plaintiff includes references to the Lanham Act and to copyright law as part of its unfair competition claim.  (Verified Amended Complaint, ¶¶ 143, 155).

A Lanham Act claim requires evidence demonstrating the following: (1) a false or misleading statement of fact about a product; (2) that such statement either deceived, or had the capacity to deceive, a substantial segment of potential consumers; (3) that the deception was material, in that it is likely to influence the consumer's purchasing decision; (4) that the product is in interstate commerce; and (5) that plaintiff has been or is likely to be injured as a result of the statements at issue.  *See, e.g., Woodjoy Enters, Inc. v. Wise Cracker, Inc.*, 2002 U.S. Dist. LEXIS 14986 **19-20 (N.D. Tex. August 12, 2002) (granting summary judgment for defendant on the plaintiff's Lanham Act claim).  In this case, there is no evidence supporting elements (1) through (3) and (5) of the Lanham Act portion of Plaintiff's unfair competition claim.

A copyright infringement claim requires evidence demonstrating the following: (1) ownership of a valid copyright; and (2) copying by the defendant of constituent elements of the work that are original.  *See, e.g., General Universal Sys. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).  In this case, there is no evidence that Klco actually used any copyrighted material of Six Dimensions to create the Apache Sling article that he wrote while at Perficient.

Defendants are also entitled to summary judgment on Plaintiff's Lanham Act and copyright infringement allegations in its unfair competition claim.

*Id.* at *37 (citation omitted).   The employee may do so "even if the former employment has acted to increase his skills and if such training is complex and extensive." *Id.* (citation omitted).   "Experience is not confidential." *Kenyon Int'l Emergency, Servs. v. Malcolm*, 2010 U.S. Dist. LEXIS 55283 *6 (S.D. Tex. June 7, 2010).

The identities, experience and contact information of Six Dimension's employees do not constitute a trade secret.   This information is readily available online, through social media sites such as LinkedIn, and derives value from *being known* to the public, rather than kept secret.   Such public, non-trade secret information consisting of names and links to LinkedIn profiles is all that Brading provided to Perficient.   (Brading Depo., at 89-90, 194).   Six Dimensions admits that "personal, e-mail address, telephone number or contact information on Linked In" is public information that is not confidential.   (Harris Depo., at 173-74).

Moreover, Harris, Plaintiff's VP of Global HR, admitted that Six Dimensions' employees accumulate much in the way of general skills and knowledge:

> Q.   Okay.  And I don't want to put words in your mouth, sir, so what would consider to be general skills and knowledge?
>
> A.   The way that we handle clients, our methodology, a number of people came to us very early in their career.   We put them through training programs and had them certified.   Specifically in our web experience group.   They became AEM certified. Some multiple certifications.  The company paid for those.
>
> Q.   Okay.

A.   The way we contact clients and how we – I don't know the correct word for it – the way that we – the way that we basically handle a client.   It's not only project management and the methodology, but it's almost like the cultural aspects of the way we approach clients and the way we deal with clients.

Q.   Any other categories of information that you consider to be general skills and knowledge?

A.   To clarify, through 6D, right?

Q.   Through 6D.

A.   Company blogging activities.

(Harris Depo., at 152-53).

McCullough did not misappropriate any trade secrets.   The indisputable evidence is that he worked on an entirely different Medtronic project for Perficient and did not use any of the contributions to the Medtronic code base.  (McCullough Depo., 68, 178; Hoffman Depo., at 74).   Moreover, it is undisputed that the code base belongs to Medtronic, not Six Dimensions.  (McCullough Depo., at 177).

Klco did not misappropriate any of Six Dimensions' trade secrets either.   The Apache Sling blog post that Klco published was on the Internet, and remains on the Internet today – making it publicly available and NOT a trade secret.  (Klco Depo., at 88-89, 110, Exh. 40).   Klco wrote an entirely new Apache Sling blog post from scratch after he began working for Perficient. (*Id.* at 104, 109, 112, 121, Exh. 41).

There is simply no evidence that Defendants or any of the Former 6D Employees misappropriated any of Six Dimensions' trade secrets.   Brading and the

Former 6D Employees are permitted to use public information like names and LinkedIn profiles, as well as all of the general skills and knowledge they acquired while at Six Dimensions, to compete against Six Dimensions.

## IV.    CONCLUSION

Defendants respectfully request that the Court grant their motion for summary judgment, dismiss Plaintiff's Verified Amended Complaint with prejudice, and award Defendants their costs and such other and further relief as the Court deems appropriate.  A proposed Order is attached as Exhibit J.

Dated: October 30, 2018        Respectfully Submitted,

*/s/ Robert D. Shank*
Adam D. Hirtz, SDTX #3209507
Jackson Lewis P.C.
222 South Central Avenue, Suite 900
St. Louis, Missouri 63105
(314) 746-4809
Fax (314) 746-4848
adam.hirtz@jacksonlewis.com

Patrick S. Richter (State Bar No.
00791524)
Jackson Lewis P.C.
816 Congress Avenue, Suite 1530
Austin, Texas 78701
(512) 362-7100
Fax (512) 362-5574
patrick.richter@jacksonlewis.com

Robert D. Shank (admitted pro hac vice)
Jackson Lewis P.C.
425 Walnut Street, Suite 2300
Cincinnati, Ohio 45202
(513) 621-3440
Fax  (513) 621-4449
robert.shank@jacksonlewis.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2018, I filed the foregoing using the electronic filing system in accordance with this Court's e-service protocols, which constitutes service upon the following counsel of record:

John P. Bostany
The Bostany Law Firm PLLC
3 World Financial Center, 24th Floor
New York, New York 10281

*/s/ Robert D. Shank*
Robert D. Shank

4842-1469-3753, v. 1