| 1 | IN THE UNITED STATES DISTRICT COURT |
| 2 | FOR THE SOUTHERN DISTRICT OF TEXAS |
| 3 | HOUSTON DIVISION |

```
 4   SIX DIMENSIONS, INC.,          §
                                    §
 5      Plaintiff,                  §
                                    §
 6   v.                             § CIVIL ACTION NO. H-17-2680
                                    §
 7   PERFICIENT, INC., and LYNN M.  § December 14, 2018
     BRADING,                       §
 8                                  §
        DEFENDANTS.                 §
 9

10

11              TRANSCRIPT OF PRETRIAL PROCEEDING
                BEFORE THE HONORABLE PETER BRAY
12                  MAGISTRATE COURT JUDGE

13   APPEARANCES:

14   For the Plaintiff:      JOHN PETER BOSTANY, ESQ.
                             The Bostany Law Firm PLLC
15                           3rd World Financial Center
                             24th Floor
16                           New York, NY 10281

17
     For the Defendants:     PATRICK S RICHTER, ESQ.
18                           Jackson Lewis PC
                             816 Congress Avenue
19                           Ste 1530
                             Austin TX 78701
20

21

22

23

24
     Produced by mechanical stenography; computer-aided
25   transcription
```

1  (In open court)

2          THE COURT:  Welcome.  Come on up and announce your

3  appearances, please.

4          MR. BOSTANY:  Good afternoon, Judge.  John Bostany for

5  the plaintiffs Six Dimensions.

6          THE COURT:  Welcome.

7          MR. RICHTER:  Patrick Richter for the defendants

8  Perficient.  And we're ready.

9          THE COURT:  Yes, sir.

10          So can we start with what I think is the more

11  troubling issue.  "A" it's not.  But it's really these text

12  messages.  So first off I think that Ms. Brading would have by

13  virtue of the New York case, had some reason to believe that

14  keeping communications between her and people at Six Dimensions

15  and Perficient that she should have preserved these text

16  messages.  So -- and it's hard for -- and I have read the

17  briefing and I understand that -- the response well.  The New

18  York case has nothing whatsoever to do with this, and it was

19  dismissed.  But it was dismissed for venue, and it's clear that

20  it was going to get refiled.  So that's where I'm at on that.

21          And by the way, I wanted to also mention nobody really

22  cited rule 37E.  Rule 37E is the rule here.

23          And so -- now this is directed to Mr. Bostany.  You

24  got to jump through a lot of traps before you get to, you know,

25  the relief that you're seeking, which is, you know, that they

1    can't present any evidence at trial.  I mean, you have got to

2    first show that electronic information should have been

3    preserved.  Second, that reasonable steps were not taken to

4    preserve it.  Third, that it cannot be restored through

5    additional discovery.  Then, I have to find prejudice, and then

6    I have to find that Ms. Brading acted with the intent to

7    deprive another party of the use of the information in

8    litigation.  And only then can you have sanctions.  And then

9    the sanctions that can be imposed have to be the least

10   sanction.  I mean, you just don't just jump to striking

11   answers.  Okay.  So let's back it up and try to step through

12   this and see where we're at.  That's kind of my view on this.

13        So I really think she should have preserved the

14   electronic text messages.  But who submitted these today?

15        MR. RICHTER:  I did.

16        THE COURT:  You did.  Okay.  Let me ask you about a

17   couple of them that appear to me -- so do you have your own

18   copy there?

19        MR. RICHTER:  I do.

20        THE COURT:  Look at Brading 26.  And by the way, do

21   you want to submit this as an exhibit to this hearing so that

22   we can just have it as part of the record?

23        MR. RICHTER:  Yes, that's fine.

24        THE COURT:  All right.  So Brading 12 through 44 are

25   admitted as Defendant's Exhibit 1 to this hearing, okay.  And

1   you keep it.  Mark it.  And you just keep it so that if there's

2   some sort of later litigation about this -- and y'all exchange

3   what this is so that you can agree that this was the exhibit.

4          MR. RICHTER:  I provided copies to Mr. Bostany.

5          THE COURT:  You see what I am saying, though, because

6   the Court is not going to keep it.

7          MR. RICHTER:  I do.

8          THE COURT:  All right.

9          MR. BOSTANY:  Your Honor, can I just suggest that as

10  you're calling out specific pages from the document that

11  Mr. Richter handed me a few minutes ago, that I indicated if

12  it's already been filed as an exhibit to the Brading

13  deposition, which a lot of these were.

14         THE COURT:  No, no, no.  This is an exhibit to this

15  hearing.

16         MR. BOSTANY:  No, but I was just going to blurt out

17  the exhibit numbers so that you can call.

18         THE COURT:  That's what I just did.  Just -- you're

19  going to confuse everything.  Brading 26, look at that.

20         MR. BOSTANY:  Yes, sir.

21         THE COURT:  See how it's cut off.

22         MR. BOSTANY:  I do.

23         THE COURT:  Is there another page where that picks up?

24         MR. RICHTER:  I do not believe so.

25         THE COURT:  So is something missing?

1          MR. RICHTER:  I don't have an answer to that.

2          THE COURT:  So it looks like something is missing.

3   Doesn't it kind of look like something is missing, like she

4   didn't get the whole thing?

5          MR. RICHTER:  Yes.

6          THE COURT:  Okay.

7          MR. RICHTER:  I mean, that's possible.  I don't know

8   that there was a response, that you can read the bottom of

9   that.  It says, "I'll keep it in mind."

10          I don't know what, if anything, goes beyond that.

11          THE COURT:  Right.  And we don't know a date this was

12   sent.

13          MR. RICHTER:  I believe --

14          THE COURT:  We kind of think --

15          MR. RICHTER:  Judge, I'm sorry.  I don't mean to

16   interrupt.  I believe page 26 is a continuation of the message

17   of the conversation that was on page 25.  Because if you read

18   what she says on 25.

19          THE COURT:  I'm agreeing with you.

20          MR. RICHTER:  Okay.

21          THE COURT:  I'm agreeing with you.  This is a ghost

22   message.

23          Now here -- let me throw something else out to you,

24   Mr. Bostany.  She did testify that she screen shotted all of

25   the messages that she had on that phone and she kept them and

1  she turned them over to counsel, right.  I mean, that was her

2  testimony.  And you said a number of times in your papers that

3  she admits to -- I mean, this is part of -- this is what makes

4  some of this very difficult, and this is why I made you come

5  here, because you're saying things in here that are just sort

6  of over the top the in my view, that Ms. Brading is not

7  anywhere admitting that she destroyed evidence.  Is she?

8          MR. BOSTANY:  Well, Your Honor, if I could just reply

9  quickly.  She admitted that she destroyed the phone in March of

10  2003.

11          THE COURT:  Destroyed?

12          MR. BOSTANY:  Disposed of, Your Honor.

13          THE COURT:  Okay.  So this is what I'm saying.  Let's

14  talk about what it really is.  What did she do with the phone?

15          MR. BOSTANY:  But just to put us in context.

16          THE COURT:  You don't want to answer my question?

17          MR. BOSTANY:  I'm sorry, I had a couple of remarks I

18  wanted to make.

19          THE COURT:  Oh, I know.  You want to say what you want

20  to say, and I'm going to let you.  But I want to get my

21  understandings because -- and I am not trying to be rude to

22  you.  This is just how I am.  I'm from New York too, okay.  So

23  I need to know the answers to my questions, otherwise I can't

24  figure any of this out.

25          MR. BOSTANY:  I'm from Missouri.

```
 1              THE COURT:  You're form Missouri.  You sound like
 2   you're from New York.
 3              MR. BOSTANY:  Well, I spent some time in New York.
 4              THE COURT:  Oh, all right.
 5              MR. BOSTANY:  And I live in Florida currently.
 6              THE COURT:  Well, that's what it is then.  All right.
 7   So, look, what did she do with the phone, from your point of
 8   view?
 9              MR. BOSTANY:  According to her testimony, Judge, she
10   disposed of the phone.
11              THE COURT:  She did that how?
12              MR. BOSTANY:  She did that in March of 2016.  We don't
13   know how.
14              THE COURT:  -- a cell phone store.
15              MR. RICHTER:  She testified to that.  She said that
16   the returned the phone to the carrier.  Either she or her
17   husband put it the mail and returned it to the carrier, and she
18   got a different phone than the iPhone she had previously.
19              THE COURT:  Why did she do that?
20              MR. RICHTER:  That I don't know the answer to.
21              THE COURT:  I mean, you didn't talk about it?
22              MR. RICHTER:  I have not spoken to her about it.  I
23   know, Judge, that's what you said earlier, which is before she
24   did it, she screen shotted all of the communications between
25   her and the former -- current former 60 employees, and she
```

1    preserved those.  And those are what we produced.

2          THE COURT:  Okay.  Go back to my other question then.

3    Look at Brading 27.  Who is  Aaron Price?

4          MR. RICHTER:  He's one of the former Six Dimensions

5    employees who came and joined to Perficient.

6          THE COURT:  And did Aaron Price produce any text

7    messages or have they been asked for from him?

8          MR. RICHTER:  -- about that, Judge.  Mr. Price in his

9    deposition testified that the phone he had at the time of these

10   messages, which would have been in the summer of 2015, he

11   testified that that was a Six Dimensions' phone, and that when

12   he terminated his employment with Six Dimensions he under that

13   phone to Six Dimensions.  Six Dimensions in the discovery

14   answer has denied that that phone belongs to it.  But that's

15   Mr. Price's testimony, and he does not have any of those text

16   messages.

17         THE COURT:  All right.  So those texts are gone and

18   can't be recovered from Mr. Price.  But according to

19   Ms. Brading, every text that she had with Mr. Price she screen

20   shotted.

21         MR. RICHTER:  That's correct.

22         THE COURT:  Now who is Bryan Warner?

23         MR. RICHTER:  I actually don't know that.

24         THE COURT:  Do you, Mr. Bostany, know who Bryan Warner

25   is, sir?

1    MR. BOSTANY:  He is a -- was at the time an employee

2  of my client, Six Dimensions.

3    THE COURT:  Has anybody talked to Mr. Warner?

4    MR. BOSTANY:  He's no longer working for the

5  plaintiff.

6    THE COURT:  That's not my question.

7    MR. BOSTANY:  Your Honor, you had directed the

8  defendant to speak to all of the recipients of the messages and

9  that was --

10    THE COURT:  So I'm asking, has somebody talked to

11  Bryan Warner to find out if he kept any messages?

12    MR. RICHTER:  I have not.

13    THE COURT:  So that would --

14    MR. RICHTER:  I did not know he was a former employee

15  of Six Dimensions, and I don't know what -- I know Mr.  Shank

16  was dealing with that.  I feel he felt ethically constricted to

17  reach out to Six Dimensions employees directly.

18    MR. BOSTANY:  You had directed, Judge, that they

19  subpoena these people.  And Mr. Shank had not done that.

20    THE COURT:  If there was some kind of ethical

21  consideration, did you all try to work that out?  You know, did

22  one side tell the other, "Hey, I know Bray told us to, you

23  know, subpoena these people, and you know if they move to

24  quash, they move to quash.  But, look, you know, this is an

25  employee of the other side's company, and I don't feel like I

1  should be talking to them."

2       Did anybody undertake that effort?

3       MR. RICHTER:  I believe Mr. Shank made that

4  communication to Mr.   Bostany.  And, Judge --

5       MR. BOSTANY:  Your Honor.

6       THE COURT:  Wait, we're not going to interrupt.  We

7  did that the last time, and it didn't work and that's why we

8  had to fly here.  I will -- I literally have all day.  You will

9  get to say everything that you want to say, just please don't

10  interrupt.  Thank you, sir.  Go ahead.

11       MR. RICHTER:  I just do want to clarify one thing, the

12  way I read your ruling from the hearing about the text messages

13  was we could subpoena people but we could also undertake these

14  little efforts to get them voluntarily.

15       THE COURT:  Okay.  That having being said, go ahead,

16  Mr. Bostany, with whatever you were about to say.  And then I

17  have still a question about Bryan Warner.  So put a little tab

18  in that in your mind.  Go ahead, sir.

19       MR. BOSTANY:  Your Honor, you were clear at the

20  September 21 on the record hearing, you suggested twice to

21  Mr. Shank that he subpoena them.  And I believe it was a

22  direction.  I have to read it again.  Mr. Shank didn't like

23  your direction, and he told you that he didn't feel

24  comfortable.  And you repeated it again.  And you said -- I

25  don't know exactly what you said, Judge.  But it was clear that

```
 1    you and Shank did not agree on the subpoena issue.

 2              THE COURT:  Okay.

 3              MR. BOSTANY:  I wrote --

 4              THE COURT:  So where is that in my -- do you know

 5    where that is?

 6              MR. BOSTANY:  I wrote to Shank on September 29 --

 7    Judge, while I'm looking for this.

 8              THE COURT:  I don't want to know what y'all said.  I

 9    want to know what I said.

10              MR. BOSTANY:  Okay, Judge.

11              THE COURT:  Okay.

12              MR. BOSTANY:  Yes.

13              MR. RICHTER:  Judge, I have the document here of the

14    transcript.

15              THE COURT:  What page are you on?

16              MR. RICHTER:  It is exhibit.

17              THE COURT:  I know.  I'm on it.  Tell me the page that

18    you're on.

19              MR. RICHTER:  It's Page 9.  I apologize.

20              THE COURT:  All right.  What -- this is what I said:

21         What I'm saying is that you can make all reasonable

22    efforts to go to the third parties who may have received the

23    text messages from Ms. Brading and get those.  Whether it be by

24    subpoena or voluntarily, they certainly can turn them over, in

25    particular if Ms. Brading signs her release or whatever she
```

1    needs to do and turn them over to you so you can turn them over

2    to Six Dimensions and let them have a complete picture of that

3    aspect of the discovery.

4           Is there any reason why an order like that is

5    unreasonable?

6           Mr. Shank says, "I'm glad to do it, Your Honor."

7           "I don't know what the results of that process will

8    be, but I'm glad to follow that process."

9           Now, let me ask you the question:  Did anybody follow

10   that process with regard to Bryan Warner?  Yes or no.

11          MR. RICHTER:  I don't know, Your Honor.

12          THE COURT:  Does Mr. Shank need to get on the phone?

13   Where is Mr. Shank, if he's the one that was going to do this.

14          MR. RICHTER:  We could get him on the phone, if that's

15   what you would prefer.

16          THE COURT:  I just need to know the answer.  We're

17   here.  He wants to, you know to strike your answer.

18          MR. RICHTER:  Actually --

19          THE COURT:  I mean, I'm just trying to figure out if

20   as to these people with whom there were texts, if somebody

21   tried to get the rest.

22          MR. RICHTER:  I actually think pages 12 through 16 are

23   not text messages.  I think they were linked in messages.

24          THE COURT:  All right.

25          MR. RICHTER:  Because of the -- just because of the

1  way they're presented.

2      THE COURT:  I wouldn't know.  So did anybody contact

3  Mr. Warner?  We don't know.

4      MR. BOSTANY:  I believe he's one of the people we

5  thought was an employee of Six Dimensions, and therefore we did

6  not reach out to him.

7      THE COURT:  Did y'all -- did anybody talk to you about

8  Mr. Warner?

9      MR. RICHTER:  Nobody spoke to me about Mr. Warner.

10     THE COURT:  Did you try to go to Mr. Warner and say,

11  "Hey, do you have anymore texts?"

12     Is he a Six Dimensions employee?

13     MR. BOSTANY:  No.

14     THE COURT:  He's not?

15     MR. BOSTANY:  Not currently, no.

16     THE COURT:  So nobody even tried.  How about

17  request -- who is Adam Ware?

18     MR. BOSTANY:  Also a former -- I believe a former Six

19  Dimensions employee.

20     THE COURT:  Same questions.

21     MR. BOSTANY:  I did not hear from Mr. Shank concerning

22  his efforts to reach Ware.

23     THE COURT:  Okay.  Stephen Plath.  Phath.  What is

24  that?  Plath or Phath?  PF or PL?  I can't even read it.

25     But by the way, I'll just tell you, as to the Warner,

1  the Ware, and Plath, those don't look like there's anything

2  missing.  Same thing with Bernie Driscol and Brading 15.  Same

3  thing with Hilary Smith on Brading 16.

4       The one -- so now Dan Klco -- CL.  KLCO.  How do you

5  pronounce it?

6       MR. RICHTER:  He pronounces it Klco.

7       THE COURT:  Wow, he's missing some vowels.  Dan Klco

8  with this whole ghost message, it just --, you know, it starts

9  out --

10      "This is a ghost message.  I cannot reach out because

11 of my non-compete.  I just want you and anyone else to know."

12      Who do you think is writing there?  Do you think

13 that's Lynn writing?

14      MR. RICHTER:  It's from Lynn Brading to Mr. Klco.

15      THE COURT:  And then he's writing back, "Hey, ghost to

16 Lynn, smiley face, yeah, there's some looking happening right

17 now mostly due to my family situation.  I'm looking low travel

18 so might be getting out of the consulting business.  I'll keep

19 it in mind though."

20      It seems like that's a termination of a conversation.

21 It could be a termination of a conversation.  Was Mr. Klco

22 deposed?

23      MR. RICHTER:  He was.

24      THE COURT:  What did he say about the completeness of

25 that text message?

1      MR. RICHTER:  I don't believe he was asked that

2   question.

3      THE COURT:  Nobody asked him about that?  Was he

4   deposed before or after these text messages were turned over?

5      MR. RICHTER:  I believe after.

6      THE COURT:  So you had these text messages and didn't

7   ask Mr. Klco about them.

8          Is that correct, sir?

9      MR. BOSTANY:  That's not correct.  Mr. Klco was asked

10  about this message, Judge.  It was the exhibit which was marked

11  as Exhibit 28 to the Brading deposition.  It was shown to both

12  Brading and Klco.  And they both recalled the message.

13     THE COURT:  Where is Klco's deposition transcript?  I

14  don't want to hear from you.  I want evidence.  So do we have

15  evidence?

16     MR. BOSTANY:  What -- it's on the docket.  But what is

17  the evidence -- what do you want to establish, Judge?

18     THE COURT:  I want to see what Klco said about this.

19  Where is it on the docket?  I don't have it.

20     MR. BOSTANY:  No one --

21     THE COURT:  What's the problem?  Do you want me to --

22  hey, Susan, would you grab my computer.

23     THE DEPUTY CLERK:  Yes.

24     THE COURT:  Thank you.  Hold on a minute because I

25  took everything that was attached to this set of motions and

downloaded it.  And I don't remember seeing this person's

deposition.  If it was attached to some other motion -- there

are well over 100 docket entries, so if it's attached to

somebody else's or some other docket entry, then my apologies.

But if somebody has his deposition, I mean, what I'm trying to

find out, the whole reason that we're here is to work our way

through rule 37 and see if you're entitled to the relief that

you are seeking.  So we have to find out, and tell me if you

don't agree with me, we have to first find out whether --

because I've already gone through the part -- hold on a minute.

You I'll pick up that -- let me just plug this in.

    (Off-the-record discussion.)

    you might -- I literally write everything y'all gave me.  I

mean -- and I am just --

        MR. RICHTER:  Judge, I actually don't believe the Klco

deposition was attached to any of these filings that are before

you today.

        THE COURT:  No, probably not.  But is it attached --

is it in the record somewhere?  Do you know, Mr. Bostany, if --

        MR. BOSTANY:  Yes, I like that, Judge.  It's in the

record, but I didn't attach it to this motion because the

arguments that I made and the theory that I made in my motion

in my reply is different than the one that's being argued by

the defense and the Court.

        THE COURT:  All right.  Go ahead and tell me what

1  you're thinking then.

2          MR. BOSTANY:  I'm thinking that the New York action

3  was dismissed in March of 2017, so the argument that she

4  disposed of her phone thereafter because she thought the action

5  was over is illegitimate because it's undisputed that she

6  disposed of the phone a year before.

7          THE COURT:  No, I got you.  So do you have rule 37

8  with you?

9          MR. BOSTANY:  Yeah, Judge, I'm not finished.  I'm not

10 finished.

11          THE COURT:  I'm already with you on that.

12          MR. BOSTANY:  Okay.  But I have three other points I'd

13 like to make.

14          THE COURT:  Go ahead.

15          MR. BOSTANY:  The request for documents in both of the

16 New York action, which were stayed that the defense makes a

17 point that those document requests were stayed prior to the

18 dismissal and the request for documents in the Texas action,

19 asks for all communications not only with former Six Dimensions

20 employees but with anyone.  There's a separate document

21 request.  Document RFP3 directed to bring in this case in the

22 Southern District of Texas case, which required Brading to

23 produce all text messages received from anyone that concerns

24 the hiring or a discussion about hiring.

25          Those would include text messages with Gomez, with

1   Sumner, who she was collaborating with extensively.  She showed

2   us in this evidence that she is prepared to send text messages

3   to people to avoid -- to stay under the radar.  So we know

4   that.  So we know that she is using texts messages.  What we

5   don't know is where the text messages are to any of these

6   people.  She's disposed of the phone.  She's either deleted or

7   somehow been unable to access the backups for these messages.

8   So I respectfully submit, Judge, that the evidence that has not

9   been produced is what we're hunting for, not dissecting the few

10  pages they gave us and say, well, you know, this is appears to

11  be a snippet, which a lot these do.  They go to the global

12  issue.  They go to the global issue that there are -- there is

13  more.

14          THE COURT:  No, I follow you.  Let me just say I don't

15  really take that away from your motion but I hear you.  I hear

16  what you're saying right now here in court, and I accept what

17  you're saying.  And I think that the -- as to the preface here

18  of 37E which is -- I already said she should have preserved the

19  text messages.  She should have preserved her phone.  She

20  should not have gotten rid of her phone.  I mean, there's --

21  it's a litigation that was very obviously going to be refiled.

22  It was dismissed for venue not for failure to state a claim,

23  not a motion for summary judgment, or anything else like that.

24  It was dismissed -- and I read the -- I mean, the opinion was

25  just that there's better places to file it, not that -- am I

```
1   right?  Not that this is a completely wrong place to file it.
2   There's just better places to file it.  So it was pretty clear.
3   This was going to come up again.  So I am holding here that she
4   should not have gotten rid of her phone.
5           MR. BOSTANY:  Can I go through intent now, Judge,
6   because you asked about --
7           THE COURT:  Yeah, that's where I'm at.  That's what
8   I'm trying to figure out.
9           MR. BOSTANY:  Okay.  Intent, Judge, is shown by the
10  date that she tells us she disposed of it, April of 2016, the
11  exact month that her attorneys were writing to Judge Gardephe
12  telling Judge Gardephe to stay the requirement to produce the
13  text messages, either a week later, a day later, a day before.
14  We don't know the exact date.  But it was in an exact month
15  that her lawyers were writing to a federal district Judge and
16  saying, "Please don't make Brading turn over her text
17  messages," in April of 2016.
18           And then in that month she disposes of the phone.
19           THE COURT:  But here is the pushback on that from me,
20  and -- well, actually what's your response?
21           MR. RICHTER:  Well, my first answer is I wasn't
22  involved.  I don't know what motivated the lawyers to ask for
23  the stay.  I don't think it was in an effort to coverup any
24  sort of destruction of evidence.  And I think Ms. Brading's
25  testimony about the text messages that were related to this
```

1  case are that she screen shotted all of them.  And I don't want

2  to be cute about this, Judge, but if you look at the ones that

3  she sent including the one your referencing to Mr. Klco, I mean

4  that's not a message I would want to produce necessarily.

5          THE COURT:  No, and that is -- that is where I'm at

6  with that is that if a person wanted to destroy evidence with

7  an intent to deprive the other side of its use, if that was the

8  whole point, she would not have saved these text messages that

9  show that she's -- don't you agree they show that she is

10  recruiting people from the other company?  I mean, they show

11  that she is kind of doing what you're accusing her of doing.

12          MR. BOSTANY:  Your Honor, she included these I believe

13  because she's not a lawyer.  And, yes, I agree that they do

14  show culpability.  But I believe they also show a lot of

15  arguments that she was making at her deposition, which is, you

16  know, did you see what I wrote in there about the Ponzi scheme.

17  And she has got arguments in there.  And she I believe -- and

18  it's shown by the fact that she has cut off portions of these

19  screen shots, she I believe in her unlawyerly-like fashion

20  selected text messages that were the least harmful.  And you

21  may find them harmful.  I find them harmful.  Defense finds

22  them harmful.  But imagine what she didn't give us then.

23          THE COURT:  That's not, that's not what the job is.

24          MR. BOSTANY:  Yes, it is.

25          THE COURT:  To imagine?

1    MR. BOSTANY:  These -- yes.  These rules and the

2 precedent this sat on to impose a very harsh sanction on people

3 that destroy evidence because federal judges like you, Judge

4 Bray, don't know, and you're not supposed to use your fantasy

5 to imagine, you say to us -- sorry, Judge.

6         You say to us, "Look, guys, I don't know what she

7 destroyed.  Disposed of.  I see some stuff here that's pretty

8 bad."

9          And you don't deny, Mr. Richter, that she didn't

10 turn over everything.  You're agreeing that there's snippets

11 here.  You're agreeing that she didn't give you any text

12 messages.

13        THE COURT:  Well, I don't think he agreed with that.

14        MR. RICHTER:  I did not agree with that.  What I'm

15 saying is whatever she had when she screen shotted the text,

16 she screen shotted and produced.  You know, texts don't last

17 forever.  They auto -- go away or, you know, I don't even how

18 that all works.  But my understanding from her -- and from her

19 testimony is whatever she had at the moment she swapped the

20 phone for a new phone, she screen shotted and is produced.

21        THE COURT:  That is her testimony and I --

22        MR. BOSTANY:  Her testimony is that she screen shotted

23 her communications with former -- with employees of Six

24 Dimensions.  She didn't say she screen shotted the entire

25 phone, and I go back to -- which is in the 2015 request and in

1  the 2017 request, and it calls for production of text messages

2  concerning hiring i.e. with Gomez and Sumner.  And she

3  testified that she only screen shotted communications with Six

4  Dimensions employees.

5      THE COURT:  I hear you.  But she also screen shotted

6  texts -- and by the way, I'm not going to go back and forth

7  with you.  I hear your argument.  Are you done with what you

8  have to tell me on that?

9      MR. BOSTANY:  Well, I'd like to say that throughout

10  the amended complaint, this serious allegation that Brading and

11  Gomez were working together, were collaborating together to

12  steal trade secrets from the plaintiff, to steal methodology,

13  to steal information, to exchange confidential information from

14  Brading to Perficient so that Perficient could capitalize on

15  that and to use Brading and others to solicit plaintiff's

16  employees and extract the key employees that can build -- the

17  plaintiff --

18      THE COURT:  I've read it.  I know what it says.

19      MR. BOSTANY:  So this conspiracy is alleged in the

20  complaint, and therefore RFP3, which talks about communications

21  about hiring.  It's critical and it's important.

22      THE COURT:  Okay.

23      MR. BOSTANY:  And we get one message from Brading.  I

24  think there might have been one message or two to a Hilary

25  Smith or to Gomez.  But nothing more than that concerning --

1        THE COURT: So what I -- let me just ask you. So

2 let's back up a second. I hear you. I'm listening to you,

3 okay. Aaron Price, was he deposed?

4        MR. BOSTANY: Yes.

5        THE COURT: Was he asked about these text messages?

6        MR. BOSTANY: He was asked, and his testimony is

7 quoted in my papers, and it indicates that he couldn't tell us

8 what these messages meant because they were cut off. We showed

9 him exactly what Brading did to us.

10        And we said, "All right, you're the recipient of this

11 message. Why don't you tell us what's missing, what came

12 before this message."

13        THE COURT: Uh-hum.

14        MR. BOSTANY: "What came after."

15        And his testimony was, "I can't tell you."

16        And Exhibit 29 was showed to him, Judge. Exhibit 31.

17        THE COURT: When you say, exhibit, you mean page?

18        MR. BOSTANY: These are exhibits?

19        THE COURT: Brading.

20        MR. BOSTANY: Well, marked as of June 13, Brading

21 deposition, if I can hand these out, Judge.

22        THE COURT: Sure, I mean.

23        MR. BOSTANY: These are on the -- these were in my

24 papers. And they're also in the packet that Mr. Richter just

25 gave you.

1          THE COURT:  Yeah, I know.  I have -- so I don't have

2    all these.

3          MR. BOSTANY:  But we asked, we asked --

4          THE COURT:  Wait a minute, wait a minute, please.

5    Stop for a second.  So what did he -- where is his, where is

6    his testimony about this cited in your papers?  Anybody.

7          MR. RICHTER:  I don't --

8          MR. BOSTANY:  Judge, I'm -- I think they're asking for

9    that, and I'm looking so that I can supply that to you.  Okay,

10   Judge, these were darn.

11         THE COURT:  Hold on.  My law clerk just told me where

12   he is.  Hold on.  Let me look at them.  But you, I'm sorry.  Go

13   ahead while I'm looking for it.

14         MR. BOSTANY:  Judge, I have four pages here that were

15   filed.  I don't know the exact exhibit.  But they're from the

16   Price transcript, and I bracketed the portion where Mr. Price

17   indicates in his testimony that he can't provide more color

18   with respect to the -- to the exhibits of the text messages.

19         THE COURT:  Hold on a second.

20         MR. BOSTANY:  They're pages 49, 172, 173, and 185.

21         THE COURT:  Just a minute.

22         MR. BOSTANY:  On the Price deposition.

23         THE COURT:  Just a minute.

24         MR. BOSTANY:  And 186 of the Price deposition

25   transcript.

1          THE COURT:  Just a minute.

2          (Off-the-record.)

3          THE COURT:  All right. I'm at exhibit C of docket

4    entry number 111.  It has some Aaron Price material.  What

5    pages did you just say of his deposition?

6          MR. BOSTANY:  Forty-eight, 172.

7          THE COURT:  All right.  Forty-eight.  Let me -- hold

8    on.  Sir, that's not here.  I mean, you just -- it's just not

9    attached.  The pages that you attached of Price's deposition

10   for whatever proposition you said you put them in there for is

11   38, 39, 40, and 41.  This is the problem that I'm up against

12   that I am reading your papers desperately trying to find not

13   attorney argument but evidence.  And I'm not trying to be

14   critical, but that's what I have to have, evidence.

15         So do you want to hand me up what you're talking

16   about?

17         MR. BOSTANY:  Your Honor, I honestly thought, and the

18   reason why I didn't attach these again, they were attached in

19   an earlier motion to compel.  I honestly thought we were past

20   that and that the issue would not resurrect, that whether or

21   not the messages were incomplete.  It was my view that we were

22   past that and that it was obvious the messages were incomplete.

23   And just the extent of the issue was going to be discussed in

24   terms of intent.  And that's why I focused on that the date of

25   the destruction and all the things that were going on at that

1  time, and I --

2          THE COURT:  Okay.  Just let me read what you handed to

3  me, okay, just for -- just real quick, okay.

4          (Brief pause.)

5          THE COURT:  Well, I don't agree that those outtakes in

6  that deposition say what you say they say.  But I've already

7  determined, and you're right, that these -- she should have

8  kept the phone, and these do not appear to be 100 percent

9  complete, which is why -- and then -- but I do find, and I've

10 let you say whatever you need to say, I do find that a person

11 who was trying to destroy evidence would not save inculpatory

12 evidence.  And so at least at this point, given the evidence

13 that's before me in this record, I do not find that she -- she

14 testified that she screen shotted out of her phone the text

15 messages that she thought she was supposed to keep, that is,

16 those with Perficient and Six Dimensions employees.  She kept

17 text messages that are to me clearly inculpatory that show she

18 was doing the things that you say she was doing.  And so I'm

19 going to be just direct with you, is the only sanction you are

20 seeking to strike the answer and prevent them from presenting

21 evidence of their defenses?  Is that the sanction you're

22 seeking?

23         MR. BOSTANY:  Your Honor, the motion, the introductory

24 paragraph to the motion asks the Court for that and two

25 alternative sanctions, which are to preclude -- and I think

there's one other one in the motion.

THE COURT:  Finish your sentence, please.  To preclude what?

MR. BOSTANY:  I'd have to read it, Judge.

This is a motion to strike -- I'm reading from the introductory.

This is a motion to strike the answers of defendant Perficient Inc. and Lynn Brading or to preclude them from offering evidence at trial now positioned to the plaintiff's claims that they conspired together to share confidential information concerning the plaintiff and solicit plaintiff's key workers to staff the newly-formed digital experience group at Perficient.

THE COURT:  Got it.  So you either want to strike the answer or prevent them from offering evidence of this conspiracy to share information.  That is the sanction you seek?  Correct?

MR. BOSTANY:  The only additional few words that are in that --

THE COURT:  I read it.  So the sanction you're seeking is on Page 1 of docket entry number 103, first paragraph.

MR. BOSTANY:  Yes, it's the two sanctions I read into the record.

THE COURT:  All right.

MR. BOSTANY:  And an additional one that I have not

1  yet completely read.

2         THE COURT:  Go ahead.  What's the additional one?

3  What are you seeking?  What is the third thing that you're

4  seeking right now?

5         MR. BOSTANY:  Well, it's the last few words.

6         Or to provide an adverse inference instruction.

7         THE COURT:  All right.  Denied.  For the reasons

8  already stated.  Because under rule 37E you haven't proven by a

9  preponderance of the evidence that she intended to deprive

10  another party of the information used in the litigation,

11  therefore, you don't get to any of those sanctions that you're

12  seeking.

13         So let's go to the other motion that we have pending,

14  the motion to compel.

15         MR. BOSTANY:  Your Honor, just for clarity, I just

16  want to make sure the Court is also denying relief as to

17  Perficient Inc. for the text messages that it failed to supply

18  separate and apart from the Brading text messages.  So the

19  motion sought relief against Lynn Brading, which you've just

20  denied.  And although we haven't discussed a portion of the

21  motion which seeks relief against Perficient Inc., I want to

22  make sure that the Court is denying that as well.

23         THE COURT:  How is it -- I don't know that it's

24  different.

25         MR. BOSTANY:  It's very different, Judge.  I just want

1  to make sure the Court is denying that as well because we

2  haven't --

3          THE COURT:  Tell me how the analysis is different.

4          MR. BOSTANY:  There's two sections to the motion.

5          THE COURT:  Why don't you come on up because I can't

6  quite hear you from down there.

7          MR. BOSTANY:  There's two sections, Judge, to the

8  motion to strike.  One section we've discussed here in quorum.

9  And the other section concerns Perficient's violations, which

10 are different than the Brading violations.  They don't relate

11 to the Brading text messages that we've just been discussing.

12         THE COURT:  What are you talking about?  I thought the

13 whole thing was about the text messages.  Did I say something

14 funny?

15         MR. BOSTANY:  No.

16         THE COURT:  I mean --

17         MR. BOSTANY:  I'm smiling because I'm happy that I

18 brought the Perficient RFP with me, and I almost didn't.

19         THE COURT:  Wait a minute, are we still talking about

20 docket entry number 103?

21         MR. BOSTANY:  Yes.

22         THE COURT:  Okay.  What is it that you say that docket

23 entry number 103 seeks other than what we just talked about?

24 Oh, the Jeanette Gomez matter.

25         MR. BOSTANY:  The Perficient Inc. was ordered to

```
 1   supply text messages with -- from and to Jeanette Gomez
 2   pertaining to the exact issue that's in the amended complaint.
 3          THE COURT:  Okay, you're right.  There is -- I was
 4   thinking that the Jeanette Gomez matter was inside of the other
 5   motion my notes are just off.  So let's talk about Jeanette
 6   Gomez.
 7          MR. BOSTANY:  The issue concerning the Jeanette Gomez
 8   production of text messages was discussed with the federal
 9   district Judge in New York.
10          THE COURT:  Yeah, I read it.  And what happened over
11   there was that that Judge said that, "Well, look, Gomez has
12   objected, so let's redirect this subpoena to Perficient."
13          Does anybody have a problem with it?
14          Isn't that what happened?
15          MR. BOSTANY:  That is correct.
16          THE COURT:  So the subpoena got redirected to
17   Perficient.  And he in effect granted Jeanette Gomez's
18   objection, you know, her individual objection to the subpoena
19   and said, "Look, to the extent that Perficient has this."
20          And Perficient is saying they don't have Jeanette
21   Gomez's phone.
22          It was her phone, right?  So what is it that there was
23   a -- in your view, Mr. Bostany, supposed to produce that they
24   didn't?
25          And then I'll let him respond.
```

1

2          MR. BOSTANY:  Well, what the Court was clear about was

3     that the obligation to produce the Gomez text messages became a

4     party obligation.  It became an obligation of Perficient Inc.

5     The Court asked both sides at that hearing whether either side

6     had any problem with making the requests for the demand of

7     where in the Gomez subpoena a party obligation as to

8     Perficient, Inc.

9          Perficient Inc.'s counsel asked for a slight

10    modification of that order so that the universe of people that

11    were sent text -- were sent ESI, they were calling it ESI, the

12    universe of people that were sent or received the ESI would be

13    limited to a group that Judge Gardephe then limited.  But at no

14    point did Perficient's counsel say, "We don't think we should

15    produce text messages, Judge because we don't have access to

16    the Gomez phone."

17         You just said that, Judge, on the record.  That is not

18    what Judge Gardephe said.

19         THE COURT:  All right.  Fair enough.  So I mean I'm

20    not agreeing or disagreeing with you.  I'm just trying to

21    understand.  So then before any of that happened, the case was

22    dismissed for lack of venue.  Now we're here.  And what is it

23    that you think that they were supposed to produce in this

24    litigation?  Text messages from Gomez?

25         MR. BOSTANY:  Text messages from Gomez.  That was --

1          THE COURT:  That Perficient had, right?  Perficient.

2          MR. BOSTANY:  Perficient was directed to produce them.

3     They had to produce them.  They didn't.  They had -- they -- I

4     agree with you.  That they may have been able to object and

5     say, well, no, we want -- Mr. Bostany is a problem.  He served

6     Gomez.  We don't want to have complications.

7          THE COURT:  So here is my problem with where we're at

8     right now, is that this case got refiled in Houston back in

9     whatever, '17 when did it get filed?

10         MR. BOSTANY:  September of 2017.

11         THE COURT:  All right.  So a year and a quarter ago.

12    And you are here seeking sanctions but you've not even --

13    there's, at least was there a motion to compel on the Jeanette

14    Gomez matter?  Was there while the discovery -- and discovery

15    is over, right?

16         MR. BOSTANY:  Correct.

17         THE COURT:  Was there a motion to compel regarding

18    this?

19         MR. BOSTANY:  Your Honor, there were a request for the

20    text messages from Perficient.  Perficient --

21         THE COURT:  Was there --

22         MR. BOSTANY:  -- waited six months before they gave us

23    anything.  We then made a motion to compel because they didn't

24    give us any text messages.  Judge Smith heard that in May.  He

25    issued an order.  I was corresponding with --

1          THE COURT:  All right.  Hold on.  If you're saying

2    that there's an order that was directed specific to these Gomez

3    texts.

4          MR. BOSTANY:  I'm not saying the word Gomez text was

5    used, Judge.  We asked for text messages.  And the

6    conversation -- there were no conversations with defense

7    counsel.  They were avoiding us.  We --

8          THE COURT:  I cannot hear you from down there.

9          MR. BOSTANY:  I'm trying to read.

10         THE COURT:  No, you're just sitting there talking.

11   Why don't you come on up.

12         MR. BOSTANY:  We attached, Judge, as an exhibit, the

13   communications concerning the Gomez text messages to my motion

14   between me and Shank.  And it wasn't until October of 2018 that

15   Shank finally disclosed that he was withholding Gomez text

16   messages.  Before then --

17         THE COURT:  Is that true, y'all are withholding text

18   messages?

19         MR. RICHTER:  We are not withholding any text messages

20   because we don't have any Gomez text messages.  They were on

21   her personal phone, and we don't have custody or control.

22         THE COURT:  Did you subpoena Jeanette Gomez in this

23   litigation?

24         MR. BOSTANY:  I did not re-subpoena her, Judge.

25         THE COURT:  Because the way I read it was that, you

know, she was not under an obligation.  And to the doesn't that

they had an obligation that, you know, this is this three years

old litigation, and now you're bringing up after the discovery

deadline is over, sir, in the context of a motion for

sanctions, you know an issue that -- now, look, they're under a

continuing obligation.  If you have them, you all need to turn

them over.  And you need to look for them.  If they're relevant

and they're responsive to a request for production, turn them

over.

MR. RICHTER:  Yes, sir.

THE COURT:  Do you understand?

MR. RICHTER:  I do.

THE COURT:  All right.

MR. RICHTER:  But just to be clear, we are not

withholding any documents related to Jeanette Gomez text

messages.

THE COURT:  I am hearing you.

MR. RICHTER:  Okay.

THE COURT:  But you are -- I am interested in getting

you the documents that you need to try your case.  And what

you're trying to do right now is have sanctions and if, you

know, it's very hard for me to understand what is the basis of

the sanction that you're seeking if what they're telling me is

they don't have them.  You didn't subpoena Gomez.  That -- it's

a very confusing situation.  Would you agree with that?

1          MR. BOSTANY:  No, I don't agree it's confusing at all.

2     I think it's very clear that Perficient had an obligation to

3     produce the Gomez text messages.  They asked for a stay of that

4     obligation.  They got the stay of the obligation.  RFPs were

5     served in this case for Perficient text messages.

6          THE COURT:  But they say they don't have them.  I

7     think Gomez might have them.

8          MR. BOSTANY:  Your Honor, they're saying that they

9     might -- right.  That's what they're saying.

10         THE COURT:  And I read the Southern District of New

11    York as having said, look, I'm going to -- that Judge even

12    said, she makes some good points about service.  I mean, I have

13    read it.  And that Judge said, she makes some good points.  And

14    you know, I'm not -- he didn't enforce that subpoena against

15    Gomez.  He didn't.

16         MR. BOSTANY:  Judge, I respectfully submit that they

17    lost their chance to say, "If you want the Gomez text messages,

18    you have so send another subpoena to Gomez."

19         They lost their chance to do that.

20         THE COURT:  How were they supposed to get them from

21    Gomez?

22         MR. BOSTANY:  Judge Gardephe said, "Can you do this,

23    if I make this a party obligation?"

24         They said, "Yes, done."

25         They have that party obligation.

THE COURT:  But if they have them.

MR. BOSTANY:  Judge.

THE COURT:  In any event -- in any event --

MR. BOSTANY:  It's circular.  How can we go back to saying, "Well, no, you know, now you have got to subpoena her again."

It's circular.  It's not --

THE COURT:  But this is being broad.  You have the obligation to turn them over if you have control over them.  Do you understand?

MR. BOSTANY:  I do.

THE COURT:  All right.  Then that's my order.

MR. BOSTANY:  And, Your Honor, exhibit H of my reply, which was filed on November 19, includes the exchange between myself and Shank.  On September 21 you heard arguments.  We didn't have an argument about Gomez, but you heard arguments about a lot of things.  And you directed the parties to talk on the phone about their discovery issues, which were ongoing all summer long, since the Judge Smith order on May 7, 2018.  All these disputes were ongoing for the entire year.

The plaintiff did not sit on its laurels and just make a motion on October 30th about discovery issues concerning text messages.  The plaintiff made motion after motion to the point where defendant argues in its papers that somehow the plaintiff should be criticized for making too many motions concerning the

1  missing text messages.

2          THE COURT:  Calm down.

3          MR. BOSTANY:  So I respectfully disagree that the

4  plaintiff waited until October 30th to raise the issue.

5  Exhibit H is an email from Mr. Shank dated October 15, 2018,

6  three weeks after you ordered him to talk to me about discovery

7  issues and to communicate and resolve them.  He waited three

8  weeks.  They sent this October 15 email, which mentions the

9  Gomez ESI and a million things were going on.

10          I responded to him, "Are you saying that you did not

11  even search for the Gomez text messages."

12          He responds on October 30 -- I'm sorry, October 29,

13  saying, "That's correct.  We did not search for the Gomez text

14  messages."

15          THE COURT:  But I just -- okay, but I hear you.  And I

16  am telling them to search for them and turn them over if they

17  have them.  But I'm not -- I'm not going to grant a sanction

18  like, you know, striking their answer based on that.

19          MR. BOSTANY:  No, I'm going to the issue that you

20  raised a couple of times, Judge, which is that the plaintiff

21  waited till October 30.  The very next day after October 29

22  when Shank said, "You're right.  We didn't search for the Gomez

23  text messages."

24          The next day was October 30.

25          THE COURT:  Okay.  But -- so what I'm telling you is

1    basically what I've told you a couple of other times, and I
2    really have -- I mean, I've read these depositions and they're
3    candidly kind of atrocious.  I mean, the back and forth in
4    these depositions is just something that I'm not familiar with
5    in my practice of law.  I am not, as you might note it, I am
6    not, you know, a voice raiser.  I want to hear and understand.
7    And there appears to me to be some voice raising and some sort
8    of personal attacks inside of this lawsuit.  Y'all are talking
9    past each other.  You're talking past each other in your
10   emails.  And it's both sides, okay.  It's, you know, the
11   communication level is really poor.

12           So I'm not going to, you know, strike an answer given
13   all this.  I want, though, to have the information turned over.
14   So that's what I want to focus on.  And I want y'all to --
15   what?

16           MR. BOSTANY:  We're missing -- I mean, I hear you that
17   you and I disagree on a legal issue concerning Gomez.  I'm.

18           THE COURT:  How about this:  How about I grant you
19   leave to issue a subpoena to Gomez despite the fact that the
20   discovery period is over.  Okay, I heard she's got them.  They
21   don't have them.  They're not under their control.

22           MR. BOSTANY:  I think if she didn't destroy her cell
23   phone, which is very possible, I think that is a --

24           THE COURT:  What about that?

25           MR. RICHTER:  Permission to subpoena Jeanette Gomez?

1        THE COURT:  Yeah, to get her --

2        MR. RICHTER:  I'm not in a position to object to a

3   subpoena to Jeanette Gomez.

4        THE COURT:  All right.

5        MR. RICHTER:  That's between the plaintiff and

6   Jeanette Gomez.

7        THE COURT:  I got it.  Right.  But the point is -- so

8   when -- what's your trial date?

9        MR. RICHTER:  We have a pretrial conference set on

10  January 16.  We don't have a trial date yet.  We're in the

11  January/February.

12       THE COURT:  Okay.  If you get right on that, you know.

13       MR. BOSTANY:  I will, Judge. I'll jump right on it.

14       THE COURT:  Do that.  That's the middle ground, okay.

15  I'm not granting a sanction.  I'm not striking some answer.

16  I'm not going to do those things.  And some of that has -- and

17  I'm not going to put this in some written order, all right.

18  I'm just telling you that some of it has to do with the fact

19  that the conduct of this litigation is -- needs to improve in

20  particular before you get to a trial.

21       MR. BOSTANY:  I respectfully submit, Judge, that the

22  conduct in this litigation was tactical on the part of the

23  defendants.  They got away with, yes, that the positions were

24  rough and there was arguing.  That was the bottom line.  They

25  got away with directing witnesses not to answer pending

questions.  They were supposed to --

THE COURT:  You all were asking witnesses about their sex life and things.  I mean, it was just -- that was just ridiculous.

MR. BOSTANY:  Your Honor, there was no questions about anyone's sex life?

THE COURT:  Yes, there was.  I just read it yesterday.  Am I wrong?

MR. RICHTER:  You are not wrong.

THE COURT:  I'm not wrong.

MR. BOSTANY:  Brading volunteered.

THE COURT:  Sir, come on.  She gave a facetious answer and you just followed up on it and you -- look, I'm not going to argue with you.

MR. BOSTANY:  Your Honor, can I just say something about him?

(Simultaneous speakers.)

THE COURT:  I've ruled, I've ruled.

No, no, no.

MR. BOSTANY:  We were off the record at one time.

THE COURT:  No, no, no.

MR. BOSTANY:  We had a good --

THE COURT:  No, no, no.

Next motion, motion to compel.

MR. BOSTANY:  Well the other relief that we sought, I

1  know you're going to deny it, but I need it on the record.

2  It's in the motion.  Attorney's fees on both the Brading

3  violation and the Perficient violation.

4          THE COURT:  Denied.  So but I want to have you turn

5  over the information to the extent that you have it, and you

6  should search for it.

7          MR. RICHTER:  Will do.

8          MR. BOSTANY:  And the or tactical maneuvering, Judge,

9  was they're waiting till October to talk about the Gomez issue

10 so that they could then come in here and say we waited too

11 long, which is also a tactical, particularly when you told them

12 they have to talk to us right away.  And they waited another

13 month practically after waiting months and months to talk to us

14 about it.

15         MR. RICHTER:  Judge, I'm sorry, I have to respond

16 briefly if I might, just very briefly.

17         This Gomez text issue is so important that when

18 Mr. Bostany deposed Ms. Gomez back in the summer, the word text

19 was never uttered.  We attached transcript as an exhibit, and

20 you can see the word index at the end, and the word text is

21 never in there.  He never asked her about it.

22         MR. BOSTANY:  Your Honor, regarding the subpoena,

23 if --

24         THE COURT:  Wait a minute.  You don't have anything to

25 say about that?

1          MR. BOSTANY:  We asked her if she is the -- we asked

2     her a lot of questions, Judge.  I'll have to read that

3     transcript.

4          THE COURT:  All right.

5          MR. BOSTANY:  We asked her about if she has deleted

6     emails.

7          THE COURT:  Subpoena her.

8          MR. BOSTANY:  If --

9          THE COURT:  But I'm not moving any dates.

10         MR. BOSTANY:  If she has she destroyed her cell phone,

11    can they at least tell us so that we don't have to go through

12    the expense of subpoenaing somebody that destroyed her cell

13    phone.

14         THE COURT:  What is Gina Gomez's situation?

15         MR. RICHTER:  She is now a former employee of

16    Perficient, Inc. I believe she resides in Austin, Texas.

17         THE COURT:  So do you know anything about her cell

18    phone?

19         MR. RICHTER:  I do not.

20         MR. BOSTANY:  Can they just inquire, Judge.  I mean, I

21    can't call her I don't think to find out.  If she destroyed her

22    cell phone, why wait three weeks or four weeks for her to tell

23    us she destroyed her cell phone.  If she doesn't have a cell

24    phone, it makes sense.

25         THE COURT:  I don't think I can, you know, get them

to -- you know, she's a non-party, nonemployee, not in their

control.

MR. BOSTANY:  Can I send her an email asking her if

she destroyed her own cell phone?

THE COURT:  I don't think that's any of my business

what you do or don't do.  I mean, aren't you allowed to go and

talk to witnesses?  Am I missing something?  Isn't that what

lawyers do?  You don't -- not everything is a deposition.  I

mean, am I missing something?  You can call anybody you want to

call.  Call her.  I mean, I'm not ordering you or giving you

permission.  I'm just saying that you're not -- you don't -- do

you feel like you need my permission to do that?

MR. BOSTANY:  The case is a little murky concerning

whether someone is a management personnel of a CEO, but I don't

think --

THE COURT:  She's not even employed by them.

MR. BOSTANY:  Gomez is.

MR. RICHTER:  She's a former employee of Perficient

Inc.

MR. BOSTANY:  Oh, she's no longer employed?

THE COURT:  That's what he just said.  All right.

(Simultaneous speakers.)

THE COURT:  It's okay.  It's all right.  All right.

Can we move on to the other part of this?

So I thought I already answered this issue about the

gross and net income and profit, didn't I?  Didn't I already --

didn't we go through that and y'all have a spreadsheet?

MR. RICHTER:  We did.

THE COURT:  I mean, I feel like I've ruled on that.

Have they not complied with my ruling, according to,

Mr. Bostany?

MR. BOSTANY:  Your Honor, I'm just pulling that motion

out, if you just --

THE COURT:  And the same thing with RFP54.  I ordered

that, and I reread my order.  I ordered them to turn over

responsive documents and not personnel files.  That's done.

MR. BOSTANY:  Judge, RFP54, you ordered them to comply

with that RFP, which sought the identities of the leaders.  You

also commented that the production that they provided doesn't

provide the identities of the leaders.  And you said to

Mr. Shank, on the record, Mr. Shank, you're going to be in a

world of hurt if you have a way to give them the identities of

the leaders and you don't.

And I comment -- and you said, well, I don't -- and

then he -- there was some statements, and you said, I don't

read RFP54 as requiring them in its -- on its face to produce

the personnel records.  But if Mr. Shank's production of the

personnel records provides an answer to the leadership

question, which you indicated was an important issue in the

case, then that was ordered produced.  Or the particular

1   personnel records are records weren't contemplated precisely by

2   RFP54.

3           THE COURT:  Hold on, hold on.  Let's just -- let's

4   just -- let's ground ourselves.  RFP54, and I apologize.  I'm

5   just having a hard time finding it in my papers right now.  If

6   somebody could give me a copy of it.  I think what I did was I

7   didn't print that out.  Or the law clerk did and I didn't bring

8   it with me.  Does somebody have that?

9           MR. RICHTER:  I don't have the actual RFPs.  They're

10  not attached to the motion.

11          THE COURT:  Yeah.  So I think Mr. Cha is looking.  I

12  know it was attached.

13          MR. RICHTER:  That's number 54 is at least alleged to

14  be quoted on Page 7 of the motion docket number 105.

15          THE COURT:  All right.  Well, let's look at it.  Let's

16  at least get a -- I'm just trying to make sure that we're

17  not -- that we're aiming at the right thing here.

18          Documents which show the leaders, officers, president,

19  vice president, and directors of the digital experience

20  business group in each of the units within that group for the

21  years listed.

22          So what documents have you turned over from which they

23  could glean that information?

24          MR. RICHTER:  We've produced the spreadsheets that

25  show the dates of hire and the names of each of the employees

1  in the group over that relevant time period.  We've produced a

2  board chart that shows the hierarchy of the group of the

3  relevant time period.  And I believe we produced some

4  PowerPoint materials that were either like internal or like

5  external marketing that show who the leaders of the group were

6  during the relevant time period.

7          THE COURT:  Okay.  So what are you missing?

8          MR. BOSTANY:  Your Honor, this is exhibit E that was

9  supposed to be filed under seal, if I can and that up.

10          THE COURT:  Sure.

11          MR. BOSTANY:  That is what they've provided.  And that

12  is -- those are documents that show the original positions that

13  these individuals had at Perficient way before the inception of

14  the digital experience group, which Mr. Hoffman, the leader of

15  the group and vice president of the company testified was in

16  January of 2015.  A lot of these hardware tactical people,

17  which was the nature of their business prior to this

18  Transmogrication -- modification into the digital experience,

19  kept on this list, show that they had the same titles like the

20  director of Wyner Network --

21          THE COURT:  Yeah.

22          MR. BOSTANY:  -- is also a director in digital

23  experience.  And when -- my communications with Mr. Shank on

24  this issue were constant that if you look at the personnel

25  records of these people and it would show what their positions

1   were in the digital experience group --

2           THE COURT:  All right.  Hold on.  Let me because I

3   think I might have a way of cutting through this.  What you're

4   trying to figure out, Mr. Bostany, if I'm not mistaken, you

5   want to show at trial -- it's your contention, or at least part

6   of it, that the people that they picked off from your client

7   ended up rising to the top of this digital experience group and

8   so they were valuable.

9           MR. BOSTANY:  Right, that they were -- no, that they

10  were the leaders instantly the leaders of the group.

11          THE COURT:  Okay.  So all right.  But what I said is

12  still right?

13          MR. BOSTANY:  Yes.

14          THE COURT:  Plus or minus.

15          MR. BOSTANY:  Yes.

16          THE COURT:  We don't have to disagree about

17  everything.  You understand that I understand you.

18          MR. BOSTANY:  Yes.

19          THE COURT:  Is what I'm after.  Okay.  Here is what I

20  want to understand:  Is it possible -- this is a very long --

21  how many people work at Perficient?  Let me just start there,

22  like just total people.

23          MR. RICHTER:  Multiple hundreds.  I'm not sure of the

24  precise number, Judge.

25          THE COURT:  All right.  What he's asking for is inside

1  of the digital experience business group.  So how big advertise

2  digital experience business group?

3          MR. RICHTER:  It varies over time.

4          THE COURT:  Is it 30 people or 300?

5          MR. RICHTER:  I think it's closer to 300 now.  I don't

6  think it was always.

7          THE COURT:  And are there within the digital

8  experience business group, is there a -- what's the title of

9  the person at the top of that?

10         MR. RICHTER:  I don't think the answer to that.

11         THE COURT:  Okay.  So there's -- but you would imagine

12  there's a title of that person?

13         MR. RICHTER:  Correct.

14         THE COURT:  And then there's people below them, right?

15         MR. RICHTER:  Yes.

16         THE COURT:  And then there must be just sort of the

17  regular.

18         MR. RICHTER:  Upper management, middle of management

19  within workers, correct.

20         THE COURT:  Yeah.  So he's used words like leaders,

21  officers, president, vice president, directors because he

22  doesn't know the names of them, right.  Or do you?

23         MR. BOSTANY:  Right.

24         THE COURT:  I mean you're trying to -- the request for

25  production is just trying to be as broad as possible so he

1    doesn't miss anything.  What I'm trying to understand is can't

2    you tell him, you know, year by year who were the people in

3    charge and what their title was.  This is a very long

4    spreadsheet, and I don't know if I know how to read it.  It's

5    confusing.  Right?  What would -- is there some -- would

6    that -- how burdensome could that possibly be?

7              MR. RICHTER:  I don't know that it would be

8    burdensome, Judge, I think the issue was what are the documents

9    that exist.

10             THE COURT:  Yeah.

11             MR. RICHTER:  That have this information in them.

12   It's not, it's not a matter of -- I mean I think the

13   information is readily available.  I just don't know that a

14   response to an RFP which is for existing documents.

15             THE COURT:  I hear you so I'm exchanging the rules a

16   little bit to try to just get past this so we can stop fighting

17   about what to me seems like a very simple thing.

18             If somebody were to ask me -- I'm just making

19   something up.  Give me the names of all the people in charge

20   inside the Southern District of Texas clerk's office for 2013,

21   '14, '15, and '16, it would be easy.  I mean, there's a couple

22   of hundred people who work down there or something.  But

23   there's only so many people in charge.  You can just give him a

24   list and then you're past this.

25             MR. RICHTER:  Yes.

1          THE COURT:  Is that something that you would object to

2     doing?

3          MR. RICHTER:  No.

4          THE COURT:  Mr. Bostany, would that be sufficient?

5     And they would be stuck with it.  I mean, in other words, I'm

6     changing -- what if we change this into an interrogatory?

7     Please list year by year the names of the people and their, you

8     know, where they were on the echelon.

9          Then you could take that, compare it to spreadsheets,

10    org. charts, things like that.  And you would have something to

11    cross-examine people with.

12         MR. BOSTANY:  Yeah, if there was a way to test the

13    answer.  If they're just going to copy and paste this.

14         THE COURT:  No, nobody is asking them -- that's not at

15    all what I said.  Were you doing something else or were you

16    listening to me?

17         MR. BOSTANY:  No, no, I was listening to you directing

18    them to supply the names of the -- the names of the leaders.

19    The names of the people that fit within the --

20         THE COURT:  Yeah, and you said you didn't object to

21    doing that.  And then we're past it.  You have precisely the

22    information you want, not a pile of documents.

23         But I do understand you to say, though, that you've

24    already turned over the documents that also answer that

25    question.

1          MR. RICHTER:  With the exception of the personnel

2     files of all those people.

3          THE COURT:  And I did not ask you to do that.

4          MR. RICHTER:  I understand.  I'm just being quick.

5          MR. BOSTANY:  And the documents, Judge, that they've

6     turned over are the ones that -- the Bate Stamped numbers that

7     you have before you.  There are no others.

8          THE COURT:  Okay.  Well, I think he said org. charts.

9     Did you not?

10          MR. RICHTER:  I believe that a org. chart has been

11     produced that's in --

12          THE COURT:  If it's not, then produce it.

13          MR. RICHTER:  Yes, Your Honor.

14          THE COURT:  If it has not been, because there's no

15     org. chart in here.  And I want to give this back because it's

16     confidential.

17          MR. BOSTANY:  Your Honor, recently I got a org. chart

18     for a collateral company, if not, the company that we're

19     talking about here.

20          THE COURT:  But they're going to hand you over -- I'm

21     telling them to.  They're going to give you the org. charts,

22     every company has got org. charts.  I mean, that's -- there's

23     somebody in charge of org. charts in every company.  There's

24     always a person who gets paid scads of money to make up org.

25     charts every quarter, so just get those and hand them over.

1      MR. BOSTANY:  For the digital experience group.

2      THE COURT:  For the digital experience group, yes,

3  correct, sir.

4      MR. BOSTANY:  And, Judge, these --

5      MR. RICHTER:  To the extent such a document exists.

6      THE COURT:  I'm not asking you to make it.

7      MR. RICHTER:  Okay.

8      THE COURT:  I'm just saying I'm certain that in a

9  large organization somebody made a org. chart because everybody

10 wants to know where they are on it.

11     MR. RICHTER:  Correct.

12     THE COURT:  I think that's just my --

13     MR. RICHTER:  And also to understand your order, it's

14 to provide as a response to an interrogatory to basically treat

15 number 54 as an interrogatory.

16     THE COURT:  Yes.

17     MR. RICHTER:  And provide responsive information.

18     THE COURT:  Exactly.  And I take you to be saying that

19 you don't object to that in any way.

20     MR. RICHTER:  I do not.

21     THE COURT:  All right.  Then we're covered.

22     MR. BOSTANY:  Judge, just so it's clear, exhibit E was

23 Perficient 3208 through 3227.

24     THE COURT:  Yes, sir.  Got it.

25     MR. RICHTER:  What would be our timeline for providing

1   that information?

2         THE COURT: Remind me again when your pretrial

3   conference is.

4         MR. RICHTER: January 16.

5         THE COURT: It's coming up. How long do you think it

6   will really take you to do that? I mean you're not going to do

7   it. You're going to get somebody at your client's place to do

8   it.

9         MR. RICHTER: Considering the first time I'm going to

10   get anybody's attention about this is probably going to be

11   Monday morning.

12         THE COURT: Yeah.

13         MR. RICHTER: I would be probably -- I mean -- and

14   then the holidays in there, that's the whole part that's

15   troubling me about --

16         THE COURT: Let's have it that you got to them at

17   least a week before the pretrial conference.

18         MR. RICHTER: Okay.

19         THE COURT: Fair enough, sir.

20         MR. BOSTANY: Yes, Judge.

21         THE COURT: All right. So now I would -- and I'm not

22   trying to giver you a hard time, but I feel like I answered

23   this 23 and 41. What more do you need?

24         MR. BOSTANY: Your Honor, 23 wasn't addressed at all.

25         THE COURT: No, but it was, it was indirectly. I mean

1  it's the same concept.

2       MR. BOSTANY:  It is the same concept.  We have

3  argument that the digital experience group was spawned and --

4  because of the leaders that they took from us.

5       THE COURT:  Yeah.

6       MR. BOSTANY:  We want to know what their profit was

7  and/or revenue for that group.

8       THE COURT:  And what I'm asking is that -- and I, you

9  know, I probably was being a little bit too presumptuous that

10 it was an easy task, you know, but I was saying, look, can't

11 you just take the spreadsheet and take the numbers on the

12 spreadsheet that they gave you and do the calculations.  Is

13 there information that's missing?

14      MR. BOSTANY:  Yes, they didn't give us a spreadsheet

15 concerning the digital experience group.  They refused to do

16 that.

17      THE COURT:  Did you?

18      MR. RICHTER:  I don't think that's right.  I think we

19 gave the name, we gave the billing rates, and all the billing

20 projects for all of the workers who came out of Six Dimensions.

21      THE COURT:  So here is the thing, you don't object to

22 doing that, right?

23      MR. RICHTER:  I believe I've already done it.

24      THE COURT:  All right.  But to the extent you haven't,

25 you don't object to doing it.

|  |  |
|---|---|
| 1 | MR. RICHTER:  Do not. |
| 2 | THE COURT:  All right.  And you believe that |
| 3 | information exists? |
| 4 | MR. RICHTER:  Correct. |
| 5 | THE COURT:  So you are ordered to supplement, to the |
| 6 | extent needed, to turn that information over to him, to |
| 7 | Mr. Bostany. |
| 8 | And, Mr. Bostany, if you don't know where it is, if |
| 9 | they think they've given it to you, will you please provide -- |
| 10 | tell him where in the discovery you believe you've given him |
| 11 | that information. |
| 12 | MR. BOSTANY:  Yes. |
| 13 | THE COURT:  Just cooperate. |
| 14 | MR. BOSTANY:  Absolutely.  And that information, |
| 15 | again, is this revenue for the digital experience group. |
| 16 | THE COURT:  Yes.  I mean, there were a series of |
| 17 | interrogatories that were all I believe related.  So the order |
| 18 | that I set out I think easily includes at least within its |
| 19 | spirit RFP23 and 41.  Do you agree with that? |
| 20 | MR. RICHTER:  I do.  I believe there's no argument |
| 21 | with that.  And I'm happy to comply with what you said today. |
| 22 | THE COURT:  Then I appreciate you doing that. |
| 23 | MR. RICHTER:  Same deadline? |
| 24 | THE COURT:  Yes, please.  That -- I really want you to |
| 25 | walk into the pretrial conference having -- and, Mr. Bostany, I |

```
1   know you came here asking for sanctions.  I got it.  And I'm
2   just going to lay this out on the record:  The sanctions you're
3   asking for are so extreme that you can't have expected that
4   this case is basically going to be turned into a default
5   judgment over this.
6        MR. BOSTANY:  Judge, even the more lenient Judges
7   where the information was not produced but then ultimately
8   discovered and provided, imposed some sanction.  Here the
9   information was not provided and never turned over because it's
10  lost, and you have imposed no sanctions.
11       THE COURT:  Well, let's be clear.  I specifically
12  asked you which sanctions you were seeking.  I'm not going to
13  make up sanctions for you.
14       MR. BOSTANY:  Judge, the three sanctions that are in
15  my motion and attorney's fees are the sanctions that judges all
16  the time they'll allow for information that was given over
17  late.  Here we have information, key information, that was
18  never turned over.
19       THE COURT:  Did that -- what I'm trying to tell you is
20  you didn't satisfy your burden to me to show that what you say
21  happened, happened.  What I will say, though, is that you
22  obviously can reraise this with Judge Hittner.  And, you know,
23  if -- and, you know, get the evidence out during the trial.
24       Ask Ms. Brading what happened to the texts messages.
25  Where are they.  I mean, nothing I'm saying bars you from doing
```

1  that.

2      I'm just saying that I'm not granting the striking --

3  the specific sanctions that you asked for are denied.  That's

4  all that's denied at this point based on the state of the

5  record.

6      MR. BOSTANY:  One of them was even attorney's fees you

7  didn't even give.

8      THE COURT:  I know that.  All right.  I'm aware.  And

9  I told you, just to be clear, so that when you pull this

10  transcript, and you need to cite this part too:  Part of the

11  reason that I'm not granting attorney's fees is that nobody

12  listened to me the last time and y'all didn't cooperate.  And

13  you have not -- you have not made the effort to work together

14  in a -- in a way that would cause me to think that one side or

15  the other is to blame or is not to blame.

16      So -- and that is based on my read of this, the record

17  on these motions, the record on the previous motions, the

18  record on other motions that are not before me that I tried to

19  dig through to try to figure out what the facts might be, you

20  know, and I have watched how the depositions were conducted and

21  I've been now a witness to this is our third hearing, maybe

22  fourth, even.  I think we had a quickie phone call that might

23  qualify as a hearing.  So for all of those reasons, that's why

24  I end up where I'm ending up.  But I'm being very clear that

25  I'm only denying the sanctions that were requested.  Y'all can

1    do whatever it is that you feel like you need to do for your

2    case when it comes to the time for trial with Judge Hittner.

3    Nothing that I say is anything that Judge Hittner can't turn

4    around.  He's your district Judge.  This is -- I just, but when

5    we leave here, and I am going to just -- the very last thing to

6    both of you is there some -- I want you to turn over the

7    information to each other so that you can have a trial that is

8    fair.  So I think I've been clear about at least what's pending

9    here.  But is there anything else I can address right now?

10          MR. BOSTANY:  Just, Judge --

11          THE COURT:  That's within my purview.

12          MR. BOSTANY:  In response to that, I believe that the

13   Court's direction on September 21st was well intentioned and

14   excellent.  And that direction came after all of the skirmishes

15   that we had in August that you read in the deposition

16   transcripts and in June and July.  And I thought that that was

17   a good direction that you put us in.  And I respectfully submit

18   that the fault did not lie in our doorstep.  We bent over

19   backwards and had multiple communications with the defendants

20   telling them you're skating on dangerous ground by ignoring us.

21   Judge Bray was not unclear.  But I'm not asking you to change

22   anything you said.  I'm just complimenting you for it.

23          THE COURT:  Well, you don't need to do that.  Is there

24   something else that I need to address today, from your point of

25   view?

 1          MR. RICHTER:  I don't believe anything further.

 2          THE COURT:  From your point of view, sir?

 3          MR. BOSTANY:  I don't think so, Judge.  Are you going

 4     to issue an order so -- even a brief order?

 5          THE COURT:  A brief order.  But, you know, the problem

 6     that I envision is the more I say, the more you're going to say

 7     that's not exactly what you said.

 8          MR. BOSTANY:  Well --

 9          THE COURT:  I've been through this now three times.

10     So, you know, I'm a little bit reluctant.  My order will be the

11     60-page transcript here.  I mean, how I do, how I do bait that

12     down into something that you're going to say, well, you forgot

13     to say this part or that, which is what you did last time.

14          MR. BOSTANY:  I think, Judge, that if you deny -- that

15     the magistrate Judge is required, and I might be wrong, to

16     grant or deny specific relief in order --

17          THE COURT:  No, I'm going to do that.

18          MR. BOSTANY:  Okay.

19          THE COURT:  But I mean as to all of the minutiae that

20     that we've been through, no, no, no, I'm not going to do that.

21     But, yes, of course.  I will -- that way under rule 72 you can

22     go to Judge Hittner and say, Bray was wrong, and, you know, do

23     whatever it is that you want to do.  That's up to you.

24          MR. BOSTANY:  I respect you, Judge.  We disagree on

25     some legal matters, but I respect your rulings, and I respect

1  you.

2  THE COURT:  All right.  Anything else?

3  MR. RICHTER:  Nothing further, Judge.

4  THE COURT:  All right.  You're excused.

5  Here, I'm going to give you these things back, by the

6  way, I don't think I need these.  To the extent -- there's only

7  one exhibit that's here.

8  MR. BOSTANY:  Judge, can we make -- I'm sorry to do

9  this.

10  THE COURT:  Do we need to go back on the record?

11  Motion to go back on the record?

12  MR. BOSTANY:  Yeah.  I respectfully ask, Judge, if we

13  could make this exhibit E, which was a copy.

14  THE COURT:  What's this?  Just say what this is.

15  MR. BOSTANY:  This is exhibit E to the motion.

16  THE COURT:  You filed it, though, right, under seal.

17  MR. BOSTANY:  But it was -- I don't know if it was

18  effectively filed under seal.  It's -- we've identified it as

19  exhibit E at the hearing 3208 through 3227, and it's not on the

20  docket.

21  THE COURT:  Mr. Cha is going to look, is doing that

22  right now.  It would be exhibit E to docket entry number what

23  is it again?

24  THE DEPUTY CLERK:  103.

25  MR. RICHTER:  No, I think it's 105 because it's the

1  motion to compel.

2          THE COURT:  Okay.  So go to --

3          MR. BOSTANY:  Okay.  He's right.

4          THE COURT:  We have it.  Okay.  Hand it to --

5          MR. BOSTANY:  My initial response are that these be

6  filed under seal.

7          THE COURT:  Oh, and you didn't file it, so now you

8  are.

9          MR. BOSTANY:  Not effectively, no.

10          THE COURT:  Can it be -- can you handle that?

11          THE DEPUTY CLERK:  I can file that under seal.

12          MR. BOSTANY:  Thank you very much.

13          THE COURT:  Done.  Anything else?

14          MR. RICHTER:  Nothing further, Your Honor,

15          MR. BOSTANY:  Nothing further, Your Honor,

16          THE COURT:  You're excused.

17          (End of Pretrial Proceeding.)

18

19

20

21

22

23

24

25

```
1                              ***

2          I certify that the foregoing is a correct transcript

3   from the recording of proceedings in the above-entitled matter.

4   I further certify that the transcript fees and format comply

5   with those prescribed by the Court and the Judicial Conference

6   of the United States.

7   Date signed:    December 28, 2018.

8

9                          /s/Leticia Ornelas Rangel

10                         Ornelas Reporting Services
                           P.O. Box 831751
11                         San Antonio, Texas 78283

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```