UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SIX DIMENSIONS, INC., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. |
| | § | 4:17-CV-02680 |
| | § | |
| PERFICIENT, INC. *and* LYNN | § | |
| BRADING, | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Six Dimensions, Inc. ("Dimensions") by and through its attorneys, Doyle LLP, brings this Amended Complaint against Defendants Lynn M. Brading and Perficient, Inc. alleging as follows:

**NATURE OF THE CASE**

DIMENSIONS is a digital marketing firm providing software and application support to its corporate customers as well as inventive and digital marketing alternatives. To effectuate its corporate purpose, DIMENSIONS relies upon highly trained coders and technical employees that both service existing corporate accounts and assist the Plaintiff in meeting the challenges of a highly competitive and fast moving market. In order to protect itself against the unfair solicitation and loss of

employees that are integral to the Company's survival and success, employees are asked to agree to non-solicitation and confidentiality provisions in a brief contract before joining the Company. DIMENSIONS also relies upon trade secrets in methods, strategies, employee skill sets and technical design and staff agrees not to disclose it.  Here, the non-solicitation, and trade secret agreements were broken at the behest, approval and to benefit Plaintiff's competitor, Defendant Perficient. Perficient and its recruitment team then used this confidential information to both raid Plaintiff's work force and service the same and similar customers.

## PROCEDURAL HISTORY

The Plaintiff originally brought suit against Defendants herein in the Southern District of New York in 2015, Docket No. 15cv8309(PGG).  On November 5, 2015, Hon. Paul G. Gardephe, U.S.D.J., entered a preliminary injunction against Defendant Brading.  On December 14, 2015, made some discovery rulings on the record.  On April 13, 2016, the Court entered an Order setting a briefing schedule for Motions to Dismiss pursuant to Rules 12(b)(3) and 12(b)(6).

On March 28, 2017, Judge Gardephe granted Defendants' Motions to Dismiss pursuant to Rule 12(b)(3) but did not dismiss any claims on Defendants' 12(b)(6) Motions.  Defendant Perficient's motion conceded that venue would be proper in several states including Texas.  The action was commenced in this Court on September 5, 2017.  On June 8, 2018, this honorable Court, by Hon. David Hittner,

U.S.D.J., denied Defendants' Motions to Dismiss which sought to dismiss all of Plaintiff's claims, also finding that some of Plaintiff's claims did not meet the pleading requirements and affording Plaintiff an opportunity to amend.

## PARTIES

1.    Since June 27, 2014, Six Dimensions, Inc. was and is a corporation, duly organized and existing under the laws of the State of Nevada, with its principal place of business in New York.

2.    "On June 27, 2014, Initial Koncepts converted to a Nevada corporation named Six Dimensions, Inc." *See* September 4, 2014 SEC Information Statement http://www.sec.gov/Archives/edgar/data/1382219/000119312514332115/d746263 ddef14c.htm.    See    also    http://www.sec.gov/Archives/edgar/data/1382219 /000119312514245690/d748872dsc14f1.htm

3.    Subsequently, Six Dimensions, Inc. became a wholly owned subsidiary of 6D Global Technologies, Inc (hereinafter "SIXD").

4.    At all times relevant hereto, Six Dimensions, Inc. was based in the City and State of New York.

5.    At all times relevant hereto, the management and senior officers of Dimensions were based in the City and State of New York.

6.    Perficient, Inc. is a Delaware corporation with offices located at 3700 Post Oak Blvd., Houston, Texas.

7.     Defendant LYNN M. BRADING was and is an individual residing at 6523 Tree View Drive, Liberty Township, Ohio 45044.

8.     Brading is a citizen of the State of Ohio.

9.     At all times relevant hereto, JEANETTE GOMEZ was the Director of Recruiting at Perficient, Inc.

10.    In 2015 and at all times material hereto Jeanette Gomez resided and worked from a Perficient office set up in her home in the City of Austin, State of Texas.

11.    At all times relevant hereto, Jeanette Gomez was part of the recruiting department at Perficient, Inc. and had the title Senior Talent Acquisition Specialist. In 2015 and at all times material hereto, ROBERT SUMNER was a hiring manager at Perficient, Inc., resided and worked at 15935 Viney Creek Dr., Houston, TX 77095

12.    In 2015 and at all times material hereto, SEAN ROY was a hiring manager at Perficient, Inc., resided and worked at 5415 Aspen Street, Houston, TX 77081

13.    PERFICIENT, INC. is liable for the actions of GOMEZ, BRADING, SUMNER, ROY and others that were involved in the scheme to extract confidential information from Plaintiff's employees and the solicitation of Plaintiff's workers.

## JURISDICTION AND VENUE

15.    This Court's jurisdiction is based upon 28 U.S.C. §1332 in that the plaintiff and defendants are citizens of diverse jurisdictions and the amount in controversy exceeds $75,000 exclusive of interest and costs.

16.    Venue is proper in this District Court pursuant to the provisions of 28 U.S.C. 1391(b).

17.    Defendants derived and derive substantial revenue from interstate commerce.

18.    Texas law applies to the claims against Defendant Perficient, Inc.

19.    Texas law applies to the claims against Defendant Brading.   California had no substantial relationship to any of the parties or conduct in this case either at the time the Brading contract with Plaintiff was signed, or the time of the tortious acts that were committed primarily in Texas by Texas based actors.

## FACTUAL ALLEGATIONS

20.    On or about August 24, 2014, Defendant Brading signed an employment agreement with Plaintiff ("Employment Agreement") [Dckt No. 10-2].

21.    Brading interviewed for this position with Plaintiff's management in New York.

22.    Plaintiff also had offices in Oregon, Ohio, Minnesota, Ireland and other locations.

23.     Brading was sent her Employment Agreement by one of Plaintiff's managers in Ohio and Brading signed the contract with Plaintiff in Ohio.

24.     Section 8(a) of the Employment Agreement states in pertinent part: "I will not, directly or indirectly, solicit, recruit or hire any employee or consultant of the Company to work for a third party other than the Company or assist any third party, person or entity to solicit, recruit, or hire any employee or consultant of the Company, or knowingly engage in any activity that would cause any employee or consultant to violate any agreement with the Company". [Dckt No. 10-2].  Attached to the Employment Agreement at the time of Brading's signing the Employment Agreement was Exhibit B, titled "Termination Certification" to be executed if and when she separated from the company.  *Id.*

25.     On June 18, 2015, upon her separation from Plaintiff Defendant Brading signed the Termination Certification reiterating the prohibition against solicitation and sharing of confidential information.  (hereinafter "Termination Certification") which stated in pertinent part:

> "I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter **pertaining to any business of the Company or any of its employees**, clients, consultants or licensees.
>
> I further agree that for twenty-four (24) months from the date of this Certificate, I **shall not either directly or indirectly solicit, induce,**

**recruit or encourage any of the Company's employees or consultants to terminate their relationship with the Company, or attempt to solicit, induce, recruit, encourage or take away employees or consultants of the Company, either for myself or for any other person or entity**. Further, I shall not at any time use any Confidential Information of the Company to negatively influence any of the Company's clients or customers from purchasing Company products or services or to solicit or influence or attempt to influence any client, customer or other person either directly or indirectly, to direct his or its purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company."

*Id.* (Emphasis Supplied)

26.    Not long after acknowledging her obligations, Defendant Brading began breaching them in two respects, by both soliciting Plaintiff's employees to leave Plaintiff and sharing confidential information with her new employer, Perficient, Inc.

27.    On or about June 10, 2015, Defendant Brading became employed by Perficient, Inc.

28.    Upon information and belief Brading was sent her contract with Perficient from Perficient's Texas Office.  Brading signed her part of the contract in Ohio, Perficient, Inc. signed its part of the contract in Texas.

29.    Perficient, Inc., is a company with over 2,000 employees and a revenue of almost half a billion dollars as of 2014.

30.    Upon information and belief, Brading was part of the recruiting team at Perficient, Inc.

and reported directly to Texas based hiring managers Sean Roy and Robert Sumner.

31.    Plaintiff is a much smaller company.

32.    Perficient competes with Plaintiff to do the same and similar work for the same and similar customers.

33.    Brading, while employed by Perficient, provided Gomez, Sumner and others, confidential information that she obtained while working for Plaintiff including the identities, experience and contact information of certain individuals that were employed by Plaintiff.

34.    Gomez cooperated with Brading in the solicitation of Plaintiff's personnel via email, text messages, chats, phone and social media.

35.    From her Perficient, Inc. home office in Ohio, Brading solicited and attempted to recruit Plaintiff's staff to leave Plaintiff's employ and join Perficient during the months of June, July, August, September, October and November.

36.    Perficient was quickly informed by Brading in June of 2015 that Plaintiff places its staff on technical projects throughout the country in correlation to the particular staff members' skills and talents.  Once placed the staff are referred to as "placements".

37.     At the time, Perficient was in dire need of competent and skilled workers with certain backgrounds, skill sets and competence in order to obtain a competitive advantage in the highly competitive technical and software space.

38.     Both Perficient and Plaintiff marketed themselves as Adobe engineers.

39.     In June of 2015, almost immediately after joining Perficient, Brading began to use Aaron Price to siphon additional confidential information regarding the placements and feed it to Perficient.

40.     During at least the months of June, July, August, September, October and November of 2015, Brading, and others that worked for Perficient, communicated aggressively and frequently with Plaintiff's current and former personnel via email, text messages, chats, phone and social media for the purpose of obtaining and providing confidential information to Defendants.

41.     During at least the months of July, August, September, October and November of 2015, Brading, Gomez, Sumner, Roy, and others that worked for Perficient, communicated aggressively and frequently with Plaintiff's personnel via email, text messages, chats, phone and social media for the purpose of persuading them to leave Plaintiff and join Perficient.

42.     All communications from and to Gomez in furtherance of the scheme to solicit and recruit Plaintiff's workers took place while Gomez was in the State of Texas.

43.     All communications from and to Sumner in furtherance of the scheme to solicit and recruit Plaintiff's workers took place while Sumner was in the State of Texas.

44.     All communications from and to Sean Roy in furtherance of the scheme to solicit and recruit Plaintiff's workers took place while Roy was in the State of Texas.

45.     On or about June of 2015, Brading supplied Perficient a copy of her Employment Agreement and Separation Agreement with Plaintiff.

46.     From approximately June through November of 2015, Brading cooperated with Gomez, Sumner, Roy and others to obtain confidential information about Plaintiff's workers' skills, backgrounds, competence and contact information in order to solicit them and recruit them away from Plaintiff.

47.     From approximately June through November of 2015, Brading fed confidential information to Gomez, Sumner and Roy including but not limited to Plaintiff's workers' skills, backgrounds, competence and contact information.

48.     Gomez, Sumner and Roy utilized the information obtained from Brading to solicit Plaintiff's personnel all the while knowing that Brading was breaching her Agreements with Plaintiff by both providing confidential information to them and assisting them to recruit Plaintiff's workers.

49.     Gomez, Sumner and Roy, from their Texas offices and homes, attempted to persuade and did persuade numerous individuals,  to terminate their agreements with Plaintiff in September, October, and November of 2015.

50.     Defendants were aware that the solicitation and recruiting of Plaintiff's employees was a direct violation of contracts with the Plaintiff that would injure and did injure the Plaintiff.

51.     Although Plaintiff was at all relevant times, a Nevada corporation, it realized its injury at its corporate headquarters in New York.

52.      Defendants were aware that the use of confidential information concerning Plaintiff's employees was a violation of contracts between the employees and Plaintiff and would injure and did injure the Plaintiff herein in this State and elsewhere.

53.     Defendants were aware that the solicitation and recruiting of Plaintiff's employees was a tortious act that would injure and did injure the Plaintiff.

54.     Defendants were aware that the solicitation and recruiting of Plaintiff's employees was a direct violation of clauses contained in the Brading contract and the contracts of others and that such violations would and did injure the Plaintiff financially.

55.     After being served with the Complaint in this action, on or about October 23, 2015, Defendant Brading sought to publish a disparaging post on the Six Dimensions, Inc. Twitter page which was intended to further harm the Plaintiff.

56.     Upon information and belief, after being served with a TRO and Preliminary Injunction prohibiting Brading from soliciting or sharing confidential information about Plaintiff's employees, Defendant Brading and those acting in concert and active participation with her violated the injunction by causing the solicitation to continue by and through others, including Gomez, Sumner and Roy.

## COUNT I TORTIOUS INTERFERENCE WITH CONTRACT

57.     The Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 56 above as though fully set forth at length herein.

58.     At least during July, August, September, October and November, Brading and Gomez were approaching employees in the Plaintiff's technical department upon which Defendant Brading was aware the Plaintiff relied in order to provide the technical services that are at the core of Plaintiff's business.

59.     The actions of Sumner, Gomez, Brading and Roy were ratified and encouraged by defendant Perficient, Inc.

60.     Defendant Perficient, Inc. was a co-conspirator in the raid upon the Plaintiff's employees by not only accepting the personnel that were extracted from the Plaintiff, but by assisting and encouraging the solicitation with actual and/or constructive

knowledge of the contracts with the Plaintiff that precluded the solicitation and sharing of confidential information.

61.    Gomez, Roy and Sumner obtained confidential information from Brading and others about the Plaintiff's employees and used that information to solicit them for Perficient, Inc.

62.    Defendants asked and encouraged Plaintiff's employees to terminate their agreements with the Plaintiff and instead join Perficient causing the following workers to terminate their relationships with Plaintiff and to join Perficient, Inc: (hereinafter "Extracted Workers":

| First Name | Last Name | Departure Date |
|---|---|---|
| Sothea | Nim | 11/18/2015 |
| Nick | Whittenburg | 10/21/2015 |
| Eddie | Yao | 10/23/2015 |
| Dan | Klco | 10/9/2015 |
| Ryan | McCullough | 11/10/2015 |
| Aaron | Price | 10/23/2015 |
| Matt | Shields | 10/22/2015 |

63.    Gomez, Sumner, and Roy elicited from Brading and others the confidential knowledge that the Extracted Workers were placed in key roles for the Plaintiff and

had special skill sets that would cripple the ability of Plaintiff to service its customers particularly if they resigned in unison.   Knowing this, Defendants aggressively solicited and pitched the Extracted Workers, claiming that Perficient offered benefits and economic advantages superior to those provided by the Plaintiff, simultaneously disparaging the Plaintiff and Plaintiff's managers.

64.    Following the Defendants said solicitation and disparagement, the Extracted Workers resigned from the Plaintiff's employ, immediately joining the workforce of Perficient thereafter.

65.    Said resignations caused by Defendants' improper solicitation of Plaintiff's employees, caused substantial damage to Plaintiff.

66.    The Plaintiff invested substantial resources in training the employees that Defendants solicited and Plaintiff relied upon the services that were provided by the groups of employees that Plaintiff solicited and resigned from Plaintiff's employ as a result of Defendants' improper solicitation.

67.    Plaintiff has lost not only the investment in training of the employees that Defendants solicited, but lost the ability to provide for customer needs on a timely basis, placed strain on other departments and other employees and Defendants' actions have impacted adversely the Plaintiff's good will and employee morale at the Plaintiff's company.

68.    There was a contract between the Plaintiff and each of the employees that separated from the Plaintiff's employ following solicitations from the Defendants.

69.    The breach of the employees' contracts with the Plaintiff was induced by Defendants' solicitation.

70.    Defendants solicited each of Extracted Workers to breach their contracts with the Plaintiff and work for Perficient.

71.    After such solicitation, the Extracted Workers did in fact terminate their contracts and/or stop working for the Plaintiff.

175.   Plaintiff has been damaged in its loss of good will, its loss in revenue from the employees that terminated their contracts with the Plaintiff, loss in resources invested in training the employees, and loss of employee morale. **As a result, Plaintiff suffered damages in the amount described in its prayer for relief.**

### COUNT II UNFAIR COMPETITION CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 – Defendant Brading

76.    **The Court dismissed Plaintiff's claim under section 17200 at summary judgment. For purposes of this Second Amended Complaint, Plaintiff only repleads this claim to the extent necessary to preserve its appellate rights.**

### COUNT III TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

85.    The Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 84 above as though fully set forth at length herein.

86.     At all times relevant hereto, Plaintiff followed a practice of placing workers on technical assignments.  All of the extracted workers with the possible except of Aaron Price and Matt Shields, were assigned to customer sites where they performed technical work for Plaintiff's customers.

87.     Plaintiff would bill the customer directly or through a third party billing agency and directly benefit financially from the work that the Extracted Workers were doing for the Plaintiff.

88.     Some of the placements were governed by contracts with expiration dates.

89.     It was the universal practice by both Plaintiff and the staff including the Extracted Workers, that they would be placed on new assignments as soon as the placements that they were working on were completed.

90.     Subsequent placements/contracts were both expected and relied upon by the Plaintiff and the worker.

91.     Defendants knew that their interference with the relationship between the Extracted Workers and the Plaintiff would cause the Plaintiff financial harm because the Plaintiff would not have the worker to complete the assignment he was on and the worker would also not be available to fill immediate placements that were lined up for the workers.

92.     Perficient was informed by Brading that the Extracted Workers were part of a "critical list" of workers that Plaintiff relied upon to fill its technical placements which were arising on an ongoing basis.

93.     Perficient, Inc. was aware that in order for a company like Plaintiff to remain profitable, it must put competent, skilled engineers and technicians on projects from both existing customers that arise during the year as well as projects for new customer that also necessarily arise in an active company like the Plaintiff.

94.     Perficient, Inc. was aware that if it persuaded the Extracted Workers to resign, by and through Sumner, Brading, Roy and Gomez, that Peficient, Inc. would obtain a competitive advantage over Plaintiff and Plaintiff would suffer financially for years to come.

95.     It was Defendants' plan to bombard the Plainiff's critical staff in an organized scheme where members of the solicitation team (Roy, Gomez and Sumner) would obtain information from Brading and repeatedly and incessantly contact the Plaintiff's critical staff, simultaneously disparaging the Plaintiff and encouraging the joining of Perficient, Inc.

96.     Defendants interference was independently tortious as it was in violation of the agreements between Plaintiff and Brading and between Plaintiff and Price.

97.     There was a reasonable probability that the Extracted Workers would have continued working on their assigned projects and would have renewed their

placements on their assigned projects had they not been solicited unlawfully by the Defendants.

98.    The Defendants knew that their interference would cause and did cause the Extracted Workers to leave their assignments for the Plaintiff.

99.    The Extracted Workers would have provided economic advantages to the Plaintiff had they not terminated their contracts.

100.    The Extracted Workers terminated their contracts with the Plaintiff as a result of Defendants' solicitation and interference, would have enhanced the Plaintiff's ability to service customers, would have provided good will to the Plaintiff, and would have provided very real economic benefits to the Plaintiff in terms of billed hours for work that they were steadily performing for the Plaintiff prior to their termination of their contracts with the Plaintiff.

101.    Had Defendants not interfered with the Extracted Workers, had they not solicited them, and had they not persuaded them to terminate their relationships with the Plaintiff, the Extracted Workers would have continued to work for the Plaintiff and caused the Plaintiff to earn substantial sums based upon the hours that they would regularly bill, income that ceased upon their termination of their relationships with the Plaintiff.

102.    Plaintiff had an ongoing business and contractual relationship with the Extracted

Workers and Plaintiff was benefitting from those relationships by earning revenue and developing client relationships through its employees.

103.   Defendant Perficient, Inc. was at all relevant times aware of these business and contractual relationships.

104.   Perficient utilized methods which were dishonest, unfair, in order to and improperly interfere with Plaintiff's business relationships.   Perficient obtained confidential information regarding Plaintiff's employees and employment agreements and in an improper, dishonest, or unfair manner utilized this information to interfere with Plaintiff's business relationships.

105.   Perficient induced, enticed, or otherwise encouraged Plaintiff's employees to breach their contractual and business relationships with Plaintiff by soliciting employees and employing said individuals in direct competition with Plaintiff.

106.   Perficient obtained confidential information from Plaintiff's employees in violation of their agreements and in an improper, dishonest, or unfair manner utilized this information to interfere with Plaintiff's business relationships.

107.   Perficient induced, enticed, or otherwise encouraged Plaintiff's employees to breach their contractual and business relationships with Plaintiff by soliciting employees and employing said individuals in direct competition with Plaintiff.

108.   Defendants' conduct will cause the Plaintiff irreparable harm because Dimensions invested invaluable training in its current employees and relies upon them to stay in business.

109.   Despite the issuance of a Preliminary Injunction on November 6, 2015, Defendants continued to interfere with Plaintiff's business by and through Gomez and others.

176.   **As a result Plaintiff suffered damages in the amount described in its prayer for relief.**

## COUNT IV BREACH OF CONTRACT

113.   Plaintiff repeats, reiterates, and realleges each and every statement in Paragraphs 1 – 112 as if fully set forth herein. **The court previously granted summary judgment in favor of Plaintiff for liability regarding this claim.**

114.   Defendants were aware that their actions were in violation of the contracts of employment with Plaintiff.

115.   Defendant Brading actively solicited employees of Dimensions to leave Dimensions which direct solicitation is a breach of the Employment Agreement and Termination Agreement.

116.   Defendant Brading indirectly solicited Plaintiff's employees and engaged in activity that would cause Plaintiff's employees to terminate their agreements with Plaintiff.

117.   Defendant Brading shared confidential information concerning the Plaintiff's employees with Perficient, Inc. which was utilized by Perficient in active concert with Brading to extract confidential information from Brading and other Dimensions' workers and former workers.

118.   Price, Klco, McCullough and others also shared confidential information with the Defendants in breach of their contractual obligations to the Plaintiff.

119.   Perficient was aware of and encouraged all of said breaches joining in the effort to harm Plaintiff and enhance its profit picture, which it accomplished by and through Sumner, Brading, Roy and Gomez, selecting the Extracted Workers as a result of the unique knowledge about their skills, background and placements that was provided to them by Brading, Price and others and using aggressive solicitation and recruitment techniques to persuade them to resign from the Plaintiff and join Perficient all essentially at the same time.

120.   The non-solicitation provisions of the contract between Plaintiff and Brading was an additional means to preserve confidentiality.

121.   Plaintiff was aware that those workers that are inside the company have access to the methods, placements, training level, competence and particular skills of its workers.

122.   Plaintiff sought to protect itself against unfair competition by prohibiting a former worker from assisting the recruitment of its other personnel by the former worker's disclosure of confidential information to competitors.

123.   As such, Plaintiff asked workers before they joined Six Dimensions, Inc. to promise to both keep the information confidential and to vow never to assist in the solicitation or recruitment of its workers.

124.   As a result of Defendant Brading's breach of contract, Defendant Brading is liable to Plaintiff for damages including but not limited to compensatory, incidental and consequential damages.

## COUNT V
## UNFAIR COMPETITION as to PERFICIENT, INC.

126.   Plaintiff repeats, reiterates, and realleges each and every statement in Paragraphs 1 - 125 as if fully set forth herein.

127.   The aforesaid conduct by Perficient in utilizing Plaintiff's former employees to raid Plaintiffs workforce is unfair competition.

128.   Perficient did not utilize customary and lawful methods to recruit qualified employees with respect to the workers that were solicited to leave Plaintiff's workforce.   Perficient could have placed advertisements and offered benefits to workers in an effort to attract the most qualified workers.  Instead, Perficient utilized confidential information within the possession of Defendant Brading and other

Extracted Workers in order to target Plaintiff's key workers in ways that Defendant Brading disclosed would be most effective.

129.   Defendants Perficient and Gomez, were fully aware that Defendant Brading was breaching her confidentiality agreement by providing the identities, skill set, and knowledge base to Plaintiff's competitor Perficient which Perficient and Gomez utilized to persuade the Extracted Workers to leave Plaintiff's work force on short notice to Defendant Perficient and Gomez' economic gain and to the Plaintiff's economic loss.

130.   Defendants were aware that their tortious interference with the Extracted Workers' contracts would cause Plaintiff financial harm in that the Extracted Workers would not be able to fulfill obligations that Plaintiff made to its customers.

131.   One of the customers that Defendants were aware the subject workers were contracted to service, was Medtronic. Defendants were aware that if they persuaded McCullough to stop working for Plaintiff on short notice and begin working for Defendant Perficient, Inc., that Plaintiff would have a difficult time meeting its obligations to Medtronic.

132.   Upon information and belief, at the same time, Perficient, Inc. was pitching Medtronic to do business with Defendant Perficient instead of Plaintiff.

133.   Defendant Perficient, Inc. sought additional confidential information from Plaintiff's employee Ryan McCullough who was principally involved on behalf of

Plaintiff in servicing its customer Medtronic. Defendants were aware that McCullough had a confidentiality agreement with Plaintiff not to disclose trade secrets and confidential information concerning Medtronic and other customers.

134. Defendants were aware that McCullough was working on what is called an "RFP" (Request for Proposal) for Medtronic, which proposes a work plan with specific computer coding methods and price points to Medtronic, which if accepted results in a contract for additional business.

135. Defendants persuaded McCullough to breach his confidentiality agreement with Plaintiff.

136. Defendants Gomez and Perficient used confidential information concerning McCullough that was supplied to them in breach of Brading's and McCullough's confidentiality agreements with the Plaintiff.

137. Unlawfully and improperly competing with the Plaintiff, Defendants solicited and persuaded McCullough to stop working for Plaintiff and to stop servicing the Medtronic account on behalf of Plaintiff and to immediately assist Perficient in its preparation of an RFP to Medtronic.

138. Defendants were aware of the existence of the confidentiality agreements and elected to conspire with each other and with Aaron Price, McCullough and others to breach those agreements.

139. Shortly after leaving Plaintiff's employ and joining Perficient, Inc., McCullough proposed an RFP to Medtronic on behalf of Perficient, all in furtherance of the effort to persuade Medtronic to stop doing business with Plaintiff and to begin doing business with Perficient to Plaintiff's financial harm and Perficient's financial benefit.

140. Perficient's conduct interfered with Plaintiff's ability to conduct its business with respect to servicing those customers that the Extracted Workers were assigned to, including Medtronic and others.

141. Perficient's conduct was contrary to honest practice in commercial matters.

142. Section 43 (a) of the Lanham Act, 15 U.S.C. Section 1125(a) sets forth in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (b) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

143.   Plaintiff is and was the owner of a publication known as the Apache Sling OSGi console (hereinafter "Apache Sling").

144.   Dan Klco was paid to develop and publish this work for the plaintiff for many months in 2015 and it was published on or about June of 2015.

145.   Before resigning from Plaintiff, Klco copied the images and codes present in the Apache Sling onto his personal laptop.

146.   Upon joining Perficient, Inc. in 2015, Klco informed Perficient of his intentional copying of the Apache Sling. With the consent, encouragement and direction of Perficient, Inc. Klco published the Apache Sling on the internet showing Perficient as the sponsor.  See https://blogs.perficient.com/digitaltech/2015/10/28/ sclassloader-now-in-aem6-0-sp3/ (hereinafter "Perficient Apache Sling")

147.   The Perficient Apache Sling was and is identical or substantially similar to the Plaintiff's Apache Sling

148.   Images contained in the Perficient Apache Sling were and are identical to the Plaintiff's Apache Sling.

149.   Code contained in the Perficient Apache Sling was and is identical or substantially similar to the code contained in the Plaintiff's Apache Sling.

150.   As a result of this conduct, the public has already believed and is likely to continue to believe that Plaintiff's Apache Sling is in some way associated with, affiliated with and/or originating from Perficient, Inc.

151.   Klco's copying was willful and as an agent for Perficient, Inc. the Defendant Perficient, Inc. is liable for the willful infringement.

152.   The acts of copying Plaintiff's Apache Sling and republishing it as originating from Perficient, constitute false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or affiliation of Plaintiff's Apache Sling product with Perficient's Apache sling product.

153.   The damages caused to Plaintiff for the confusion is very real in that the reputation of technical providers like Plaintiff and Perficient, Inc. is based in part on the sponsorship of technical publications such as Apache Sling and if the public believes that Perficient is the author and/or sponsor rather than Plaintiff, the relevant public will more likely trust Perficient with business rather than Plaintiff.

154.   Apache Sling is also an original work that was authored by Plaintiff as an original work and was republished by Perficient, Inc. in violation of copyright law

155.   Wherefore, Perficient, Inc. is responsible for damages incurred by its unfair competition and infringement.

## COUNT VI UNJUST ENRICHMENT

157.   Plaintiff repeats, reiterates, and realleges each and every statement in Paragraphs 1 – 156 as if fully set forth herein.

158.   Defendants have been unjustly enriched by receiving the benefit of Plaintiff's research and technical guidance without compensating Plaintiff.

159.   Plaintiff utilized its recruiting resources and training of the subject workers to not only recruit them but to prepare them and assign them to certain projects which Plaintiff was committed to by and through contacts with Plaintiff's customers.

160.   Defendant benefitted by the expenditure of these resources, by obtaining workers through unfair methods, that were already trained for certain projects and utilizing those workers to not only pitch the same customers for the same projects, but to use those workers for similar projects without needing to undergo the expenses of traditional recruitment efforts, and without needing to spend resources training them.

161.   Further, Defendant Perficient was unjustly enriched in its enhancement of its technical abilities by using confidential information supplied to it by Brading to obtain the most valuable technical staff that would enhance the ability to perform certain work and that would increase the profit margin of the company.

162.   The availability of certain technical staff was and is limited and it is and was a constant cause of concern for technical companies like Plaintiff and Perficient to

be able to attract the most qualified technical staff in order to be able to attract the best customers.

163.   By utilizing unfair and tortious methods and misappropriating trade secrets, Defendant Perficient was able to broaden its capabilities, increase its profit while at the same time limiting Plaintiff's capabilities, decreasing Plaintiff's profit, and damaging Plaintiff's relationships with its existing customers.

164.   Wherefore, Defendant Perficient must turn over the profits that it obtained from being unjustly enriched to the Plaintiff herein.

## COUNT VII VIOLATION OF TEXAS UNIFORM TRADE SECRETS ACT ("TUTSA")

165.   Plaintiff repeats, reiterates, and realleges each and every statement in Paragraphs 1 – 164 as if fully set forth herein.

166.   Defendant Perficient, Inc. is using and knowingly has used trade secrets in an effort to not only compete with Plaintiff, but to interfere with Plaintiff's relationships with its customers and employees.

167.   A trade secret is defined as: "information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under

the circumstances to maintain its secrecy.  Tex. Civ. Prac. & Rem. Code Ann. §
134A.002(6).

168.    The qualifications, performance, training and customer assignment of the
Extracted Workers were not generally known and were part of a strategy, method
and technique utilized by Plaintiff to service particular customer needs with the most
project specific talent.  In the hands of a competitor this information would shift the
competitive advantage such that the competitor can poach the employees that were
assigned to customers that the competitor sought to obtain. And that is precisely
what Perficient attempted to do and did in its concerted plan to steal the Plaintiff's
critical staff.

169.    Plaintiff kept its secrets confidential and required as a pre-condition to
working for Plaintiff that workers execute brief contracts which primarily concerned
confidentiality.

170.    Robert Sumner, Aaron Price, Lynn Brading and others, explicitly discussed
the strategy of causing the most harm to the Plaintiff by targeting the critical staff on
key client projects, moving them over to Perficient, which would then re-assign them
to the same clients as part of an effort to increase business for Perficient and cause
these same clients to reduce or remove completely their business from Plaintiff
which is what happened.

171.    Brading was having late night meetings with Aaron Price and communicating with him constantly in person, by text and phone in June through November of 2015 for the specific purpose of extracting the trade secret information about the Plaintiff's client servicing methods, information that Price was intimately aware of as a client manager for Plaintiff.   Brading would immediately transfer the information she extracted from Price and others to Sumner, Gomez and Roy, which would target the Plaintiff's critical staff, 4 of which were among the Extracted Workers.

172.    Aaron Price acknowledged that such information was confidential as part of his employment agreement with Plaintiff (hereinafter "Price Agreement") and Perficient was aware of said confidentiality provisions during its receipt of the said information from Price and others which it used to solicit and recruit the Extracted Workers.

173.    At all times relevant hereto, Plaintiff employed substantial measures to preserve the confidentiality of its said business information.   The skill sets, placements, and backgrounds of the Extracted Workers were not publicly available nor posted on Linked In in 2015.

174.    The Price Agreement provided in pertinent part:

> 2.    It is understood and agreed that the business of 6D is of a confidential nature. During or prior to the term of his or her employment work, 6D may have revealed to Employee confidential information concerning 6D or any of 6D's affiliates of subsidiaries, if

any, which, if known to competitors thereof, would damage 6D or its said affiliates or subsidiaries.  Employee agrees that **he will not, directly or indirectly, divulge, disclose** or appropriate to his own use, or to the use of any third party, any **secret, proprietary or confidential information or knowledge** obtained by him concerning 6D or its subsidiaries or affiliates, if any, **including, but not limited to**, information pertaining to sales, sales volume, systems, manuals, processes, confidential reports, methods and strategies for obtaining and retaining candidates and clients of 6D, lists of either past, present or prospective candidates/clients, operating procedures, **names of temporary or permanent placements** and methods, ideas or improvements belonging to or relating to the business of 6D. The above restriction on the use or disclosure of any information defined as confidential or proprietary to 6D shall apply during and after the term of Employee's employment and for all the time thereafter and in all situations not involving Employee's work responsibilities in behalf of 6D. Further, should Employee leave the employ of 6D, Employee shall promptly deliver to 6D all materials of a secret or confidential nature relating to the business of 6D or its subsidiaries or affiliates, if any, which are in the possession or control of Employee.

3.     (a) As a separate and independent covenant, Employee agrees that for twelve (12) months from the date of the termination of Employee's employment with 6D, Employee will not:

(i)     in any way, directly or indirectly, **attempt to solicit, take away or otherwise interfere with any placements**, any current or prospective clients and/or candidates, any candidates or contacts discovered or learned of while employed by 6D, or any other trade, business or patronage of 6D; or

(ii)     attempt to interfere with any officers, employees, representatives or agents of 6D **or attempt to solicit or induce any of them to leave the employment of 6D**.

Price Agreement (Emphasis Provided) [Dckt No. 11-2]

177.   The ability of a competitor to obtain information about the particular training, customer assignment and job performance of Plaintiff's workers has substantial independent economic value.

178.   Perficient, Inc. obtained the trade secrets for the purposes of both damaging the Plaintiff economically and at the same time advancing the competitive and economic standing of Perficient, Inc.

179.   Perficient, Inc.  utilized trade secrets to solicit Plaintiff's customers, including Medtronic, Inc.

180.   Ryan McCullough an employee of Plaintiff formerly assigned to Plaintiff's Medtronic account, was intimately involved in the preparation of what is known as an "RFP" to Medtronic.  RFP's abbreviations of "Request for Proposal" are used by both the vendor and the customer to achieve a scope of work at an acceptable price to both parties.

181.   Upon information and belief, McCullough, at the behest, approval and encouragement of Perficient, Inc. utilized his knowledge of the Plaintiff's RFP to Medtronic to assist Perficient in preparing its own RFP to Medtronic, which Perficient used and is using to persuade Medtronic to terminate its relationship with Plaintiff.

182.   McCullough provided to **<u>Perficient</u>**, Inc., Plaintiff's techniques, pricing and methods used for Medtronic which McCullough was intimately aware of as chief technician on the Medtronic project for the Plaintiff.

183.   Immediately upon signing McCullough to work for Perficient in November and December of 2015, Perficient debriefed him on Plaintiff's contacts with Medtronic as well as pricing, strategies, techniques, and methods for Plaintiff's servicing of Medtronic.  Perficient then used this information to pitch Medtronic and obtain business from it as part of an RFP for additional business that was being presented to Medtronic in November and December of 2015.

184.   While in Plaintiff's employ, Dan Klco, a computer programmer, authored a new OSGi console plugin which he published on the Adobe Apache Sling website and advertised via a blog on Plaintiff's website.

185.   Klco was paid a salary by Plaintiff week after week while he prepared and logged code for the Apache Sling publication.

186.   While he was planning his resignation, Klco impermissibly downloaded the code and images that he used for the Apache Sling publication onto his personal laptop.

187.   Klco was aware that these images and code were the property of the Plaintiff.

188.   Almost immediately after Klco joined Perficient, Klco published an almost identical Apache Sling blog for Perficient without authorization from Plaintiff.

189.   The publication of the Apache Sling OSGi console has independent economic value to the company on whose behalf the method is published as it enhances the reputation of the company.

190.   The company that publishes the Apache Sling blog benefits financially as it is an indication to customers of the technical competence of that company.

191.   Yet the technical competence and achievement relative to the Apache Sling publication and images were developed on Plaintiff's dime, while Klco was working for Plaintiff and were the property of the Plaintiff as consented to by Klco in his contract with the **Plaintiff**. [Dkt Entry 11-2].

192.   Perficient, Inc. is responsible for the theft of these images and codes by approving of Klco's copying of them from Plaintiff's servers and republishing them on **Perficient's** site on or about November of 2015 immediately after Klco joined Perficient.

193.   Both the Klco and McCullogh's contracts contained the following confidentiality provision:

> It is understood and agreed that the business of 6D is of a confidential nature. During or prior to the term of his or her employment work, 6D may have revealed to Employee confidential information concerning 6D or any of 6D's affiliates of subsidiaries, if any, which, if known to competitors thereof, would damage 6D or its said affiliates or subsidiaries. *Employee agrees that he will not, directly or indirectly, divulge, disclose or appropriate to his own use, or to the use of any third party, any secret, proprietary or confidential information or knowledge obtained by him concerning 6D or its subsidiaries or affiliates*, if any, including, but not limited to, ***information pertaining***

*to* sales, sales volume, ***systems, manuals, processes,*** confidential reports, ***methods and strategies*** for obtaining and retaining candidates and clients of 6D, lists of either past, present or prospective candidates/clients, operating procedures, names of temporary or permanent placements and methods, ***ideas or improvements*** belonging to or relating to the business of 6D.  The above restriction on the use or disclosure of any information defined as confidential or proprietary to 6D shall apply during and after the term of Employee's employment and for all the time thereafter and in all situations not involving Employee's work responsibilities in behalf of 6D. Further, should Employee leave the employ of 6D, Employee shall promptly deliver to 6D ***all materials of a secret or confidential nature relating to the business of 6D or its subsidiaries or affiliates, if any, which are in the possession or control of Employee***.

See Contracts included in Docket Entry 11-2.

194.   Defendant Perficient, Inc. and its employees used and are using Plaintiff's trade secrets to obtain a competitive advantage that they would not otherwise have enjoyed.

195.   Defendants' use of Plaintiff's trade secrets provide an unfair competitive advantage to Defendant Perficient, Inc.

196.   **As a result, Plaintiff suffered damages in the amount described in its prayer for relief.**

## COUNT VIII

## VIOLATION OF UNIFORM TRADE SECRETS ACT Cal. Civ. Code § 3426

197.   Plaintiff repeats, reiterates, and realleges each and every statement in Paragraphs 1 – 196 as if fully set forth herein.

198.    To the extent that the court decides to apply California law to Brading, Brading is in violation of the California Uniform Trade Secrets Act.

199.    Defendants' practice of using confidential information that it knew was a trade secret is an unfair practice and deceptive.

200.    Brading's breach of the confidentiality provisions of her contract with the Plaintiff were unfair, deceptive and fraudulent.

201.    Brading's breach of the non-solicitation provisions of her contract with the Plaintiff was unfair, deceptive and fraudulent.

202.    Defendants' tortious interference was unfair, deceptive and fraudulent.

203.    Plaintiff was completely in the dark about the ongoing practices within its own company and subterfuge by its own presumably loyal employees during at least the months of June through November of 2015.

204.    Brading, Price, Klco and others were actively breaching their promises of confidentiality for months all the while deceiving Plaintiff into believing that they were living up to the promises they vowed to keep in their agreements.

205.    Defendant Brading obtained trade secrets from Plaintiff via improper means, breach of a duty, theft and/or misappropriation.

206.    Defendant Brading's conduct harmed Plaintiff as hereinbefore described **<u>in Plaintiff's Prayer for Relief.</u>**

207.   Ms. Brading encouraged Plaintiff's employees including but not limited to Ryan McCullough to breach his contract with the Plaintiff by sharing trade secrets relating to Plaintiff's customers with Perficient, Inc. so that Perficient, Inc. could unfairly compete with the Plaintiff.

208.   Perficient utilized the Plaintiff's trade secrets to compete with the Plaintiff and is used Plaintiff's trade secrets to actively pitch Medtronic, Inc. to terminate its relationship with Plaintiff and to increase its business with Perficient which it succeeded in accomplishing.

209.   Defendants profited substantially by the placement of the Extracted Workers on similar projects that they were working on for the Plaintiff and in some cases the same exact projects for the same customers, all harming the Plaintiff in a not insubstantial way.

## JURY DEMAND

Plaintiff Requests a trial by jury as to all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

- **$613,932.00 in lost profits from its extracted workers;**
- **$1,247,706.00 in unjust enrichment/disgorgement for Perficient's revenue from the extracted workers;**

- **$14,997,442.50 in in unjust enrichment/disgorgement for Perficient's revenue from the expansion of its Adobe Experience Group;**

- **$1,814,554.00 in unjust enrichment/disgorgement for Perficient's revenue from the Medtronic – Project Atlas project;**

- **$1,535,516.00 in unjust enrichment/disgorgement for Perficient's revenue from other Medtronic projects;**

- **$150,000.00 in statutory damages under the Lanham Act; and**

- **$29,994,885.00 in exemplary damages.**

- **That this Court adjudge that Perficient, Inc. has copied the Apache Sling and infringed in violation of the Lanham Act, 15 U.S.C. § 1125 and/or Copyright Law.**

- **An award of Treble or enhanced damages or statutory damages as allowed by law;**

- **An injunction requiring the Perficient, Inc. to take down its Apache Sling publication;**

- **Attorneys' fees, costs, pre-judgment and post-judgment interest as provided by contract and/or by law; and**

- **Any other relief available by law;**

Respectfully submitted,

MICHAEL PATRICK DOYLE
S.D. Texas Bar No. 13309
PATRICK M. DENNIS
S.D. Texas Bar No. 578507
JEFFREY I. AVERY
Federal ID Number 2033042
The Clocktower Building
3401 Allen Parkway, Suite 100

Houston, Texas 77019
Phone: 713.571.1146
Fax:  713. 571.1148
service@doylelawfirm.com
**ATTORNEYS FOR PLAINTIFF**
**SIX DIMENSIONS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document was forwarded to counsel of record on this the 1st day of March, 2019, via ECF, hand delivery, overnight courier, U.S. Mail, certified mail, return receipt request, or facsimile, pursuant to the Federal Rules of Civil Procedure:


_____

**MICHAEL PATRICK DOYLE**