UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

-----------------------------------------------------------------X
SIX DIMENSIONS, INC.,

                                Plaintiff,

- against -

PERFICIENT, INC. and LYNN M. BRADING,

                                Defendants.
-----------------------------------------------------------------X

Civil Action No.:4:17-CV-02680

# MOTION FOR PARTIAL RECONSIDERATION OF ORDER DATED APRIL 8, 2019

The Bostany Law Firm PLLC ("Law Firm") respectfully moves for reconsideration of two aspects of this Court's Order dated April 8, 2019 ("the Order"). This motion seeks clarification/reconsideration of the apparent holding in the Order that this Court's jurisdiction over the Law Firm's reasonable fees is limited to the amount of any recovery by Six Dimensions (hereinafter "6D").

## Reconsideration as to the Motion for a Continuance

The Law Firm seeks Reconsideration of this Court's apparent holding in the Order that this Court's jurisdiction to determine fees is limited to any recovery or settlement recouped by 6D. It is respectfully submitted that this holding – urged by 6D for the first time in its Reply brief without any legal citation -- is both contrary to law and the efficient resolution of the matter.

In its March 15 Reply, [Dkt. 179], 6D argued for the first time its view that this Court's jurisdiction to determine reasonable attorneys' fees was restricted to whatever amounts may be recovered in this matter, without citing any authority for the position. In contrast, the Law Firm's filings sought this Court's determination of the reasonableness of the fees billed, without being limited to what 6D may recover. *See e.g.* Dkt. 150. 6D was well aware of this issue before it filed its initial opposition papers. Indeed, the Law Firm stated to 6D in a letter dated March 8, 2019 [Dkt. 178-1]: "The Court did not restrict this firm's legal bill to a recovery and your refusal to accept Defendants' settlement offer does not inure to the detriment of this law firm as you assume as fact in your proposed motion." *Id.* Yet despite being aware of this disagreement, 6D did not raise the argument in its March 14 Motion for a Continuance.

Although the stipulated-to Lien prevents 6D from dissipating any recovery in this case until it satisfies payment of the reasonable legal fees that this Court determines, 6D is incorrect that this Court only has jurisdiction to determine the reasonableness of fees with respect to any potential recovery in this case.

It is respectfully submitted that once the Court exercises supplemental jurisdiction to determine the reasonableness of fees, it can and should determine the issue of fees owed, not limited to the recovery in the case, and regardless of whether there is any recovery in the case before it. *Universal Acupuncture Pain Services, P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 264 (2d Cir. 2004)(citing cases) ("a discharged attorney's recovery in *quantum meruit* for a fee is not limited by the former client's ultimate recovery, which might be determined after—sometimes long after—the time of discharge; We conclude, however, that the district court did abuse its discretion by deciding that the clients' lack of a monetary recovery in the underlying litigation precluded Q & S from being awarded compensation for its services in *quantum meruit*. A fee based on *quantum meruit* is for the reasonable value of the services rendered *before* discharge, which, as noted, is typically determined immediately after discharge."); *See also*, *Joseph Brenner Associates, Inc. v. Starmaker Entertainment, Inc*., 82 F.3d 55, 58 (2d Cir. 1996) (rejecting argument that trial court did not have the authority to enter a

money judgment where "the fee dispute was related to the main action. Because the district court was familiar with the amount and quality of the work performed".).

While there is a lien on $705,000 on any recovery or settlement, the court's determination of the amount of reasonable legal fees is independent of the lien.[1] Any other result would lead to judicial inefficiency and multiplication of litigation for the entirety of the reasonable attorney's fees to be determined. For example, if the recovery in this case were $400,000, and this Court only determined the reasonableness of the fees up to that amount, then the Law Firm would need to file another plenary action to decide the reasonableness of the fees above that amount.

Moreover, there is serious concern that 6D is failing to prosecute this matter to the detriment of both its shareholders and Law Firm. Incredibly, 6D failed to even respond to a March 14, 2019 Motion by Defendants to Reconsider significant aspects of this Honorable Court's carefully prepared Order entered on December 28, 2018. This failure appears to be either due to neglect/inadvertence; otherwise, the only logical explanation for a default is some intentional indifference to the outcome of this matter.

---

[1] While paragraph 3 of Dkt. 159 discusses specific limitations on release of funds, paragraph 4 sets forth the Lien.

## 6D's Default on the March 14, 2019
## Motion for Reconsideration was Harmful

Defendants' March 14, 2019 Motion for Reconsideration, (their second motion for reconsideration of the December 28 Order) argued that a decision of another California District Court should be followed under the intervening authority doctrine. 6D appears to have simply forgotten to submit opposition by the April 4, 2019 due date. This neglect by 6D was the kind of mishandling of the case that Law Firm cited at the February 5 Hearing as a reason why its legal fees should be computed expeditiously. Though Law Firm agreed to turnover/subsitution to accommodate 6D's plea's for urgent turnover, Law Firm never envisioned a prolonged period of non-payment. In the event that 6D's counsel didn't forget to file its papers, then alternatively, 6D is seeking to deprive Law Firm of its fee. 6D is simultaneously barraging this Court with filings seeking to delay determination of the fee, while it deconstructs the Law Firm's significant achievements and the strategic position the case was left in at the time of turnover. This possibility, that 6D is seeking to spite the Law Firm for emotional reasons though it is also detrimental to its own shareholders is a frightening proposition.

In its original Order entered on December 28, 2018, [Dkt. 133], this Honorable Court considered the parties respective arguments concerning the disparate interpretations of California law. As the Court is aware, there are a state court intermediate appellate decisions and several federal district court cases that have not uniformly interpreted California law on the issue before the Court, *i.e.* did a non-solicitation clause become invalid if it was present in the same agreement as a non-compete. This Court carefully determined that the reasoning of certain sister district courts was persuasive and held in pertinent part:

> In California employers may not prohibit former employees from hiring the employer's current employees. *Arthur J. Gallagher & Co. v. Lang,* No. C 14-0909 CW, 2014 WL 2195062, at *4 (N.D. Cal. May 23, 2014) (Wilken, J.). However, California employers may lawfully prohibit former employees from soliciting the employer's current employees. *Id.; see also Hendrickson v. Octagon Inc.,* 225 F. Supp. 3d 1013, 1031 (N.D. Cal. 2016) (Breyer, J.). Thus, where an employment contract contains both no-hire and no-solicitation provisions, the Court voids the no-hire provision and leaves the no-solicitation provision in effect. *Thomas Weisel Partners LLC v. BNP Paribas,* No. C 07-6198 MHP, 2010 WL 546497, at *7 (N.D. Cal. Feb. 10, 2010) (Patel, J.).

*Six Dimensions, v. Perficient, Inc.*, 356 F.Supp.3d 640, 646 (S.D.Tex. 2018)(Hittner, J)

In short, United States District Judge David Hittner agreed with United States District Judges Breyer and Patel. *Id.* At the time of this Court's December 28, 2018 Order, as well as its January 15, 2019 Order denying Reconsideration, this Court was well aware that one California intermediary appellate courts *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 239 Cal.Rptr.3d 577, 590, 28

6

Cal.App.5th 923, 939 (Cal.App. 4 Dist., Div. 1, 2018) did not completely agree with another California intermediary appellate court *Loral Corp. v. Moyes,* 219 Cal.Rptr. 836, 844, 174 Cal.App.3d 268, 280 (Cal.App. 6 Dist.1985). Defendants had cited *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc. supra,* in their December 3, 2018 Reply Brief. [Dkt. 118].

This Court was unpersuaded by *AMN* and for good reason. The facts in *AMN* lent themselves to a determination there that the non-solicitation/non-recruitment provision was a restraint on trade because the Defendant there was a recruiter. *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc. supra*. The *AMN* Court held "[u]nlike the former employee in *Moyes,* who was an executive officer of the plaintiff employer, in the instant case individual defendants were in the *business* of recruiting and placing on a temporary basis medical professionals, primarily nurses, in medical facilities throughout the country. If enforced, section 3.2 thus restrained individual defendants from engaging in their chosen profession, even in a "narrow" manner or a "limited" way." *Id*. In essence, in *AMN*, since the cmployees were recruiters, stopping them from soliciting materially hindered their very profession, so the nonsolicitation provison on those facts acted as a form of non-competition. *Id.* That situation does not exist here.

The issue in *Loral Corp. v. Moyes,* 219 Cal.Rptr. 836, 844, 174 Cal.App.3d 268, 280 (Cal.App. 6 Dist.,1985) was on the other hand very much like the facts of the case before this Honorable Court. *Moyes* "involved the validity of an agreement that restrained a former executive officer of the plaintiffs from 'raiding' the plaintiffs' employees. The plaintiffs sued the defendant in *Moyes* for breach of contract after the defendant became the president of a competitor of the plaintiffs and offered employment to two 'key' executive officers of the plaintiffs. On appeal from a judgment of nonsuit granted after the plaintiffs' opening statement, the *Moyes* court reversed and allowed the case to proceed. In so doing, the court noted that 'contracts precluding a former employee from obtaining new employment with a competitor are invalid under section 16600' but nonetheless relied on a reasonableness standard when it found 'limited restrictions which tend more to promote than restrain trade and business do not violate the statute'." *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, *supra*, quoting *Loral Corp. v. Moyes, supra*.

The *Moyes* Court concluded "This non-interference agreement has no overall negative impact on trade or business." *Loral Corp. v. Moyes,* 219 Cal.Rptr. 836, 844, 174 Cal.App.3d 268, 280 (Cal.App. 6 Dist. 1985).

Accordingly at the time of the December 28, 2018 Order, one of the Divisions of California's 4th District Court of Appeal that decided *AMN* distinguished the reasoning of California's 6th District Court of Appeal that decided *Moyes*.[2]

Judge Freeman's uncertainty on the issue was made clear in her honor's original order, preserving jurisdiction. "Indeed, the Court previously recognized that a published Court of Appeal decision addressing this precise issue post-*Edwards* would be important to this Court in its final decision." *Barker v. Insight Global, LLC*, 2019 WL 176260, at *3 (N.D.Cal., 2019). Even if Judge Freeman had not left the question open, *Barker v. Insight Global, LLC*, *supra,* is not intervening controlling law upon this Honorable Court which has parallel authority to the *Barker* Court.[3]

"To justify reconsideration under Rule 54(b) the Defendant must show that there has been an intervening change in controlling law. A motion for reconsideration should not be used to re-litigate matters that have already been

---

[2] There are 18 Divisions of 6 District Courts of Appeal in the State of California. See flow chart of California's court system respectfully annexed as **Exhibit N**.
[3] Had *AMN* been decided after this Court's December 28 decision and not raised in Defendants' December 3rd filing, it still would be insufficient grounds to warrant reconsideration and intervening controlling law. See e.g. United Teacher Associates Ins. Co. v. Union Labor Life Ins. Co., 414 F.3d 558, 565 (5th Cir. 2005) ("While decisions of intermediate state appellate courts provide guidance, they are not controlling").

advanced by the party or to raise arguments that should have been made previously". *Motion Games, LLC v. Nintendo Co., Ltd*., 2014 WL 11619164, at *4 (E.D.Tex., 2014); *See also, In re Cobalt International Energy, Inc. Securities Litigation*, 2017 WL 3620590, at *3 (S.D.Tex. 2017)(decisions from sister circuits are not binding on courts in the Fifth Circuit). *McNeese Photography, L.L.C. v. Access Midstream Partners, L.P*., 2016 WL 1312630, at *3 (W.D.Okla., 2016)("With respect to what constitutes an "intervening change in controlling law," sister courts (including those in this circuit) have held the "controlling law" at issue must be precedential"); *United States ex rel. Carter v. Halliburton Co.*, 2016 WL 634656, at *2 (E.D. Va. 2016) (decision from First Circuit Court of Appeals was not intervening change in controlling law since it was nonbinding); *McNamara v. Royal Bank of Scotland Grp, PLC*, No. 11-cv-2137, 2013 WL 1942187, at *3 (S.D. Cal. 2013) (" 'controlling law' under Rule 59(e) refers specifically to binding precedent only."); *Local 703 v. Regions Fin. Corp*., 2011 WL 4431154, at *1 (N.D. Ala. 2011) (a decision from another Circuit "is not an intervening change in controlling law."); *Patterson v. Sapperstein*, 2006 WL 3375199, at *1 (D. Utah 2006) ("[w]hile Plaintiff cites numerous non-binding cases from other jurisdictions, he neither argues nor cites an intervening change in the controlling law, and the Court finds none.").

### *California Intermediary Appellate Courts Do not Treat <u>Loral</u> as Abrogated*

Even within the 4th District Court of Appeal that decided *AMN*, Division 3 appears to continue to believe that *Moyes* is sound jurisprudence. Three weeks ago, it cited *Moyes* as support for its holding that it was reasonable for a litigant to conclude that nonsolicitation clauses were enforceable.

> UNEV reasonably could have believed the nonsolicitation agreement, which did not purport to prevent Junk from *hiring* UNEV employees, was enforceable. (See *Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268, 279 (*Loral* ) [declining to invalidate antiraiding provision in employment contract under section 16600]; Ming et al., Cal. Prac. Guide: Employment Litigation (The Rutter Group 2018) ¶ 14:415, p. 14-60 ["contract may prohibit employees, upon termination of their employment, from soliciting other employees to join a new business," citing *Loral* ]; cf. *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.* (2018) 28 Cal.App.5th 923, 939 [expressing "doubt [about] the continuing viability of" *Loral* after *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937]."

*Junk v. Ultimate Nev, LLC*, 2019 WL 1290525, at *4 (Cal.App. 4 Dist. Div. 3, March 21, 2019). A copy of this decision is respectfully annexed as **Exhibit O**.[4]

---

[4] The *Junk* Court is a sister intermediary appellate court to *AMN* and certainly did not conclude that *Loral* was no longer good law as Judge Freeman determined.

## Conclusion

It respectfully requested that the Court clarify that its jurisdiction with respect to the fee dispute is not limited to the amount of 6D's recovery. With respect to the substantive legal issue concerning Breach of Contract, while 6D defaulted, this Court may *sua sponte* revisit the issue. It is well-settled that a decision by a sister federal court, is not controlling on other courts, and thus do not constitute intervening controlling law that can warrant reconsideration. The state of California law at the time of the March 14 motion was the same as it was when this Court decided the issue originally - - the majority of California decisions, with the exception of AMN that was dealing with the ability of a recruiting business to recruit, have applied the plain text of California Business & Professions Code § 16600 as only prohibiting non-compete agreements. That is, the majority of California decisions have correctly held as did this Court on December 28, 2918, that nonsolicitation provisions are not void *ab initio* in California.

Dated: April 9, 2019

                                        Respectfully Submitted,

                                        __s/John P. Bostany_____  
                                        John P. Bostany  
                                        Southern District of Texas Bar No. 3074761  
                                        THE BOSTANY LAW FIRM, PLLC

3 World Financial Center- 24th Fl
New York, New York 10281
Tel: (212) 530-4400