# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SIX DIMENSIONS, INC., | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) Case No. 4:17-CV-02680 |
| PERFICIENT, INC. and LYNN M. BRADING, | ) ) ) ) |
| *Defendants*. | ) ) |

## DEFENDANTS' SUPPLEMENTAL PRETRIAL BRIEF

Defendants Perficient, Inc. ("Perficient") and Lynn Brading ("Brading") (collectively, "Defendants") file this Supplemental Pretrial Brief in this matter, which is set for trial on June 10, 2019.

## I. INTRODUCTION

In September 2017, Plaintiff Six Dimensions, Inc. ("Six Dimensions") filed this lawsuit against Perficient and Brading. On April 8, 2019, Six Dimensions filed its Second Amended Complaint asserting the following claims: (1) Tortious Interference With Contract; (2) Unfair Competition Under California Business And Professions Code Section 17200 (against Brading only); (3) Tortious Interference With Prospective Economic Relations; (4) Breach of Contract (against Brading only); (5) Unfair Competition (against Perficient only); (6) Unjust Enrichment; (7)

1

Violation of the Texas Uniform Trade Secrets Act; and (8) Violation of the California Uniform Trade Secrets Act.

Defendants summarize below the legal issues anticipated for trial with the anticipated factual testimony about such issues included.

## II. SUMMARY OF ISSUES FOR TRIAL

**A.      The 2014 Agreement between Six Dimensions and Brading.**

Six Dimensions required Brading to sign a 7-page Confidential Information Invention Assignment Agreement ("Agreement"). The Agreement contains three key provisions: (1) a 2-year post-termination employee non-solicit provision; (2) a 2-year post-termination customer non-solicit provision; and (3) a California choice-of-law provision.

This Court's April 8, 2019 Order determined that the employee non-solicit provision contained in Brading's Agreement is void and unenforceable. *See* Dkt. #189 at p. 10.

**B.      The alleged 2015 Agreement between Six Dimensions and Brading.**

**There is no 2015 Agreement.** Brading signed a Termination Certification that is page 7 of the Agreement when her employment with Six Dimensions ended. To the extent Plaintiff seeks to assert a claim for breach of contract based on the Termination Certification, Plaintiff's claim fails.

The allegations of the Second Amended Complaint make clear that the Termination Certification is not a new promise not to solicit made at the time of termination. Rather, it is part and parcel of, **and required by the express terms of**, the Employment Agreement. *See* Dkt. *Id.* at ¶ 25 ("On June 18, 2015, upon her separation from Plaintiff Defendant Brading **signed the Termination Certification** reiterating the prohibition against solicitation . . . .") (emphasis added). The Termination Certification was never intended to be (and as a matter of law is not) a new, separate promise not to solicit.

Even if the Termination Certification is a new promise not to solicit made at the time of termination, the Entire Agreement Clause (*see* ¶ 10(b) of Agreement) mandates the application of California law. Because California law applies, the non-solicitation obligations of the Termination Certification are void for the exact same reasons the non-solicitation obligations of the Agreement are void. *See* Dkt. #189 at p. 10.

Plaintiff's arguments that the alleged consideration for the Termination Certification is that Six Dimensions "allowed" Brading to resign are unpersuasive. Brading was an at-will employee and was free to resign for any reason or no reason at any time. *See East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888) (holding that employment for an indefinite term may be terminated at will and without cause by either employer or employee). As a fundamental matter of

3

Texas law, there was nothing Six Dimensions could do to stop Brading from resigning. Therefore, "allowing" her to resign is no consideration whatsoever.

Moreover, Brading received nothing in exchange for executing the Termination Certification – not continued employment, not additional specialized training, not continued access to Six Dimensions' confidential information – nothing. There is no factual allegation in the Second Amended Complaint to the contrary.[1]

Because there is no allegation in the Second Amended Complaint, nor any recitation in the Termination Certification, of Brading receiving anything of value (much less anything that could give rise to Six Dimensions' interest in restraining Brading following the termination of her employment) in exchange for her execution of the Termination Certification, there is no "2015 Agreement."

C. **Whether Plaintiff's tortious interference with contract claim fails for lack of the existence of a valid contract.**

One of the required elements for a tortious interference with contract claim is that a valid contract exists. *See, e.g., Stemtech Int'l Inc. v. Drapeu*, 2016 U.S. Dist.

---

[1] In fact, as noted, above, the Second Amended Complaint actually alleges that the Termination Certification is a requirement of the Employment Agreement – and NOT a separate contract. *See* Dkt. #190 at ¶24 ("Attached to the Employment Agreement **at the time of Brading's signing the Employment Agreement** was Exhibit B, titled 'Termination Certification' **to be executed if and when she separated from the company**."); *Id.* at ¶ 25 ("On June 18, 2015, upon her separation from Plaintiff Defendant Brading **signed the Termination Certification** reiterating the prohibition against solicitation . . . .") (emphasis added).

LEXIS 178591, *31 (W.D. Tex. Dec. 27, 2016) (citation omitted); *see also Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 140 (Tex. App. 2005). Six Dimensions cannot establish the existence of a *valid* contract that Perficient allegedly interfered with.

The 2014 and the Termination Certification between Six Dimensions and Brading are void under California law. So too are the agreements signed by the other former 6D employees (Nick Whittenburg, Eddie Yao, Dan Klco, Ryan McCullough, Aaron Price, Matt Shields, and Sothea Nim.) (hereinafter, the "Former 6D Employees"), which are also governed by California law, for the same reasons. Moreover, Brading and each of the Former 6D Employees were employees at will while working for Six Dimensions. As such, either Six Dimensions or any of the individuals could terminate their employment relationship at any time, for any reason, with or without notice. Thus, "merely inducing one of the parties to exercise his right to terminate contractual relations after giving the required notice" does not constitute tortious interference with contract under Texas law. *Faucette v. Chantos*, 322 S.W.3d 901, 914 (Tex. App. 2010) (citation omitted); *see also ACS Investors v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

**D.** **Whether there are any facts showing independently wrongful or tortious conduct by Defendants, as required for a tortious interference with prospective economic relations claim.**

The elements of this claim are similar to those of a tortious interference with contract claim, except that Plaintiff need not allege the existence of a valid contract.

5

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Six Dimensions must prove conduct that was independently tortious or wrongful, *i.e.*, that Defendants' conduct would be actionable under a recognized tort. *See Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). Moreover, Six Dimensions must prove that the act interfered with a reasonably probable contract that would have been entered into but for the interference. *Coinmach*, 417 S.W.3d at 924.

Six Dimensions' prospective economic relations claim is based on Defendants' purported interference with Six Dimensions' at-will relationships with the Former 6D Employees. (See Dkt. No. 53, ¶¶ 96, 107). Six Dimensions cannot demonstrate any independently wrongful or tortious conduct on the part of Perficient, nor can Six Dimensions demonstrate any reasonable probability that the Former 6D Employees would have maintained their employment relationship with Plaintiff. Neither Brading's nor Perficient's approaching and encouraging of the Former 6D Employees to join Perficient is an independently wrongful act.

There is simply no evidence of an otherwise wrongful act, *other than the purported violation of the unenforceable agreements*. These alleged actions of interference, regardless of Six Dimensions' allegations as to the number of employees or the employees' alleged value and potential value, are independently *lawful* but for the invalid and unenforceable employee nonsolicit provisions.

6

**E.      Plaintiff's claim for unfair competition under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.***

The Court dismissed Plaintiff's claim for unfair competition under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. on summary judgment. See Dkt. #133, p. 14.

**F.      Whether there is any evidence of any protectable trade secrets that Defendants took.**

Plaintiff's remaining causes of action alleging unfair competition, unjust enrichment, and misappropriation of trade secrets (under both the Texas and California Uniform Trade Secrets Acts) are, in essence, the same claims denominated somewhat differently.[2] At the core of each claim lies Six Dimensions' allegation that Defendants misappropriated the identities, skill sets, and knowledge base of Six Dimensions' employees.

Six Dimensions' unfair competition and unjust enrichment claims are preempted by the Texas Uniform Trade Secrets Act ("TUTSA"), which governs all trade secret misappropriation that occurs after September 1, 2013. *See* TEX. CIV. PRAC. & REM. CODE § 134A.007(a). The events giving rise to Six Dimensions' purported claims occurred after September 1, 2013.

---

[2] Under Texas common law, "unfair competition" includes several causes of action including: (1) passing off, *i.e.*, misrepresenting one's own goods or services as someone else's, or palming off, *i.e.*, misrepresenting someone else's goods or services as one's own; (2) trade secret misappropriation; or (3) common law misappropriation. *See*, e.g., *Taylor Publ'g. Co. v. Jostens Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). The similarity in these claims is the alleged taking and use of a trade secret.

Under TUTSA, a required element of a trade secret claim is the existence of a trade secret. *See, e.g., Stemtech*, 2016 U.S. Dist. LEXIS 178591 at *31 (citation omitted). It is black letter Texas law that "[a]n employee may use his general knowledge, skill and experience acquired in the former employment to compete." *Id.* at *37 (citation omitted). The employee may do so "even if the former employment has acted to increase his skills and if such training is complex and extensive." *Id.* (citation omitted). "Experience is not confidential." *Kenyon Int'l Emergency, Servs. v. Malcolm*, 2010 U.S. Dist. LEXIS 55283 *6 (S.D. Tex. June 7, 2010).

The identities, experience and contact information of Six Dimension's employees do not constitute a trade secret. This information is readily available online, through social media sites such as LinkedIn, and derives value from *being known* to the public, rather than kept secret. Such public, non-trade secret information consisting of names and links to LinkedIn profiles is all that Brading provided to Perficient. Moreover, such information that Six Dimensions claims to be "secret" was already known to Perficient before Brading (or the Former 6D Employees) left Six Dimensions and went to work for Perficient.

Six Dimensions admits that "personal, e-mail address, telephone number or contact information on Linked In" is public information that is not confidential. Moreover, Tandy Harris, Plaintiff's VP of Global HR, admitted that Six

Dimensions' employees accumulate much in the way of general skills and knowledge.

Ryan McCullough did not misappropriate any trade secrets. McCullough worked on an entirely different Medtronic project for Perficient and did not use any of the contributions to the Medtronic code base. Moreover, it is undisputed that the code base belongs to Medtronic, not Six Dimensions.

There is simply no evidence that Defendants or any of the Former 6D Employees misappropriated any of Six Dimensions' trade secrets. Brading and the Former 6D Employees are permitted to use public information like names and LinkedIn profiles, as well as all of the general skills and knowledge they acquired while at Six Dimensions, to compete against Six Dimensions.

### G. **Plaintiff's copyright claim.**

To prevail on a claim of copyright infringement, Plaintiff "must show that (1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original." *Baisden v. I'm Ready Productions, Inc.,* 693 F.3d 491, 499 (5th Cir. 2012) (internal quotations and citation omitted).

#### 1. Klco did not copy the Apache Sling screenshots.

Dan Klco specifically denies directly copying the images he used on the Six Dimensions blog post for use in the Perficient blog post. Moreover, Klco testified at some length about the various dissimilarities in the images used in the two blog posts, as well as the differences in the remaining content of the two blog posts.

2. <u>The Apache Sling screenshots are not copyrightable</u>.

Six Dimensions' copyright claim also fails because the Apache Sling screenshots at issue are not original and, thus, are not copyrightable. Instead, they are copied directly from the Apache Sling application within the Adobe Experience Manager – a software program that is not owned by Six Dimensions.

The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345 (1991) (citing *Harper & Row, Publishers, Inc.* v. *Nation Enterprises,* 471 U. S. 539, 556 (1985)). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publications*, 499 U.S. at 345 (citing 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990)).

Klco's testimony here is clear – the Apache Sling is <u>not</u> the property of Six Dimensions. In addition, Klco described how he created the screenshot: he "opened the [Apache Sling] application with the new version of Adobe Experience Manager that did have that open source component included in it and took another screen shot." (Klco Depo at p. 112, l. 14-19).

Nothing about this process suggests any originality in the creation of the Apache Sling screenshots, nor can any inference of ownership by Six Dimensions in the underlying software application be drawn. Indeed, it is clear from Six

Dimensions' copyright registration that it is not claiming ownership of the code for the Apache Sling application. Screenshots of the Apache Sling's functionality are simply not original and, therefore, not copyrightable.

Even if Klco copied the Apache Sling screenshots from the Six Dimensions blog post (which he expressly denied), there was no copyright infringement as a matter of law because any copying was of non-copyrightable elements.

3. Any original parts of the Six Dimension blog post were not copied.

To the extent there are original elements of the Six Dimensions blog post, they are found in the content of the post – not in the images. And, as with the images, Klco testified at length that the posts are not identical. Furthermore, the language used in the Perficient blog post is not copied from the Six Dimensions blog post.

4. Plaintiff cannot recover statutory damages for any alleged copyright infringement.

In addition, it should be noted that—contrary to the allegations contained in the Second Amended Complaint—Plaintiff cannot recover statutory damages for any alleged copyright infringement. Any alleged infringement occurred in 2015 when the Klco Perficient blog post was published (*see* Dkt. #190 at ¶146). Plaintiff registered its alleged copyright in 2018. Section 412 of the Copyright Act states **no award of statutory damages or of attorneys' fees** shall be made for any infringement of copyright commenced after initial publication and before the effective date of its registration. *Mason v. Montgomery Data, Inc.*, 967 F.2d 135,

143-144 (5th Cir, 1992) (emphasis added). Plaintiff did not register its copyright until three years after the alleged infringement took place. Therefore, neither statutory damages nor attorneys' fees are available to Plaintiff on its claim of copyright infringement.

H.     **The alternative causes of Plaintiff's alleged damages.**

2015 was a chaotic year for employees at Six Dimensions. The Securities and Exchange Commission ("SEC") indicted Benjamin Wey, a large investor in Six Dimensions, for fraud. In the second half of 2015, three separate securities-related lawsuits were filed against Six Dimensions alleging that Six Dimensions made material misrepresentations concerning Mr. Wey. At least one of those lawsuits was a putative class action complaint on behalf of Six Dimensions' stockholders. Three members of Six Dimensions' Board of Directors resigned from Six Dimensions in the Fall of 2015 also.

In November 2015, Six Dimensions received notice from NASDAQ that its common stock would be delisted. According to Six Dimensions itself, NASDAQ's delisting caused Six Dimensions irreparable harm and "killed hundreds of American jobs [and] ruined a promising American technology company . . ." Further according to Six Dimensions, its alleged losses "would not have occurred or surfaced if it wasn't for NASDAQ wrongfully delisting the company based on fabrications and intentionally causing irreparable harm."

Six of the Former 6D Employees (in addition to Brading) resigned their jobs at Six Dimensions and went to work for Perficient in 2015: Whittenburg, Yao, Klco, McCullough, Price, and Shields. One of the Former 6D Employees was terminated by Six Dimensions: Nim. All of the Former 6D Employees were employees at will during their employment with Six Dimensions. They left Six Dimensions for various reasons, none of which were because of communications with Lynn Brading. For example, Ryan McCullough's reasons for leaving Six Dimensions included issues of trust in the executive leadership/direction and uncertainty due to the lawsuits filed against Six Dimensions.

**I.      The proper calculation of Plaintiff's alleged damages.**

As will be shown at trial, there are many flaws with Plaintiff's alleged damage calculations, each and all of which make them unreliable, speculative and patently excessive. Not only did Six Dimensions not mitigate its alleged damages, but its damage calculations do not include the proper measure of damages for employees allegedly solicited: costs for search firms, employment ads, interviewing costs, travel costs and expenses for potential new employees, signing bonuses (if any) once employed, moving costs and allowances, and other expenses attributable to new hires.

Dated: June 7, 2019						Respectfully Submitted,

						*/s/ Robert D. Shank*
						Adam D. Hirtz, SDTX #3209507
						Jackson Lewis P.C.
						222 South Central Avenue, Suite 900
						St. Louis, Missouri 63105
						(314) 746-4809
						Fax (314) 746-4848
						adam.hirtz@jacksonlewis.com

						Patrick S. Richter SDTX #186476
						Texas State Bar No. 00791524
						Jackson Lewis P.C.
						816 Congress Avenue, Suite 1530
						Austin, Texas 78701
						(512) 362-7100
						Fax (512) 362-5574
						patrick.richter@jacksonlewis.com

						Robert D. Shank (admitted pro hac vice)
						Jackson Lewis P.C.
						201 E. Fifth Street, 26th Floor
						Cincinnati, Ohio 45202
						(513) 873-2144
						Fax  (513) 898-0051
						robert.shank@jacksonlewis.com

						ATTORNEYS FOR DEFENDANTS


# **CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2019, I filed the foregoing using the electronic filing system in accordance with this Court's e-service protocols, which constitutes service upon counsel of record:

						*/s/ Robert D. Shank*
						Robert D. Shank

4823-9975-3369, v. 1